CLARK FRUIT COMPANY v. STEPHAN.

[No. 13,733.   Filed March 11, 1930.]

154

*Aiken, Grant & Aiken,* for appellant.
*Eggeman, Reed & Cleland, Peters & Leas* and *James P. Murphy,* for appellees.

McMAHAN, J.—Appellee recovered a judgment against appellant for injuries received from falling into an elevator shaft or well in appellant's place of business. The complaint is in two paragraphs. The first paragraph alleges that appellant was engaged in the wholesale fruit business and had an elevator which ran from the basement to the third floor of appellant's storeroom; that there are partition walls on the north and south sides of the elevator, which is equipped with gates on the east and west sides designed so that, when the elevator is not at the first floor, the gates will prevent people from walking into the open shaft; that, when the gates are at the first floor, they can be operated from that floor by raising them with the hands, and, when raised about seven feet, they will catch a device which is intended to hold them until they are tripped, when they will automatically descend to the first floor; that appellee was a retail grocer and went to appellant's store to purchase fruit, and, while there for that purpose, appellant negligently raised the gate on the east side of the elevator without warning appellee and negligently allowed the elevator to ascend to the second floor while the gates were up; that appellant failed to properly operate the elevator and negligently allowed the same to become out

of repair, so that the device used would not trip and drop the gates, by reason of which, the elevator shaft, from the first floor to the basement, was open, and, because of being dimly lighted, could not be seen easily; that appellee, by reason thereof slipped and fell into such well and was seriously injured. The second paragraph charges negligence on the part of appellant in permitting the region about the elevator to be in a state of darkness, and in not having the gates and shaft lighted.

Appellant, for many years, owned and operated a wholesale fruit store. Appellee was one of its regular customers, and, on the day of his injuries, went there to buy some fruit. He wanted some bananas, which were kept in what was known as "the banana room," which was on the east side of the building and north of the elevator. The storeroom was 40 feet wide and faced south. On the day of his injury, appellee entered the door from the south, and Ralph Clark, an employee of appellant, conducted him to the banana room, and, in so doing, crossed over the elevator, which was then level with the first floor. The elevator shaft was about six feet square, with solid walls or partitions on the north and south sides, and was located about the center of the building. There was a gate on the east and also one on the west side that could be raised with the hands. When Clark and appellee crossed over the elevator on their way to the banana room, the west gate was up. The testimony of the witnesses is not in accord as to the position of the east gate. Clark, and at least one other witness, said it was down. Clark said he raised the gate and that he and appellee passed under it as they went to the banana room. Appellee said that the gate was up and that he did not see Clark raise it. The banana room is on the east side of the store and north of the elevator, the south wall thereof being just north of and next to the elevator. The door to the banana room is about a foot

east of the northeast corner of the elevator. There is a narrow passageway along the south and east sides of the elevator to the banana room. East of the elevator, stairs lead to the basement and to the second floor. Boxes of fruit were piled several feet high between the stairs and banana room, and also south of the stairs between the stairs and a large ice box on the north side of the office, which was in the front part of the room and just east of the south door. There were no windows on the east side. The store had a glass front, several windows and a couple of doors on the west. Clark and one or two other witnesses testified concerning the artificial lighting of the room, and said there was a bright electric light at that time a short distance west of the elevator and one a few feet south and east of it, both of which were burning at the time appellee was injured. Appellee testified there was no light there at that time. A few minutes after appellee and Clark entered the banana room, Clark was called out to answer the telephone, appellee remaining to see if he could find some ripe bananas. Appellee left the banana room about 10 minutes later and, in so doing, fell into the elevator shaft and was seriously injured. Clark testified that when he left the banana room he went along the east and south sides of the elevator, and that at that time the east and west gates were down. Appellee testified that, when he came out, he started to cross the elevator the same as he and Clark did when they went into the room, that the east gate was up, and that he took a couple of steps after leaving the banana room and fell into the elevator shaft.

The gates in question were made of wood, were about three feet high, and slid up and down in grooves. At the time of the accident and for many years prior thereto, appellant had a mechanical device on the elevator shaft which held the gates up, and which was so constructed that, when the elevator was moved from the first floor

to the second floor, the gates would be released and automatically drop down to the first floor so as to guard the open shaft. This device had been in use about 20 years, and the undisputed testimony is that it had never theretofore failed to work, and that it was tested immediately after the accident to appellee and worked perfectly. As heretofore indicted, the evidence as to whether the east gate was up or down, and as to whether the electric lights were burning at the time of the accident, is in irreconcilable conflict.

Appellee was in appellant's store as an invitee. Clark accompanied him from the main part of the store to the banana room, and, in so doing, they passed over the elevator, which, at that time, was level with the first floor. There is evidence that both gates were up at that time, although Clark said the east gate was down. Appellee, in going over the elevator with Clark on the way to the banana room, was an invitee and had a right to assume that the course so taken was reasonably safe.

Appellant contends that we must hold as a matter of law that appellee, in going over the elevator on his way from the banana room, became a mere licensee, as distinguished from an invitee, and argues that, having furnished a safe passageway along the east and south sides of the elevator, appellee, in order to retain his status as an invitee, was bound to use that way, and that, by attempting to leave by a mode of exit other than that ordinarily used for that purpose, he became a bare licensee. We cannot concur in this contention. If, as appellee contends, the east gate was up when he and Clark went into the banana room, and also when he left the room, he had a right to assume that it was safe for him to return over the course he had traveled a few minutes before, unless, by the exercise of reasonable care, he could have learned otherwise. If

the east gate was up and the place was so dimly lighted and, while in the exercise of reasonable care, he failed to observe that the elevator had been moved from the first floor, it became a question for the jury to determine whether appellant was negligent in failing to light the place and whether appellee was injured by reason of such negligence. We are not going to undertake the impossible by attempting to reconcile the testimony in order to state how the accident happened.

There is merit in appellant's contention that the evidence is not sufficient to charge it with negligence because of the failure of the gates to properly function and drop when the elevator was moved to the second floor just before appellee was injured. These gates had properly functioned for 20 years, during which time they had, without an exception, closed when the elevator was moved to the second floor. The evidence upon this question is uncontradicted, and if the verdict rested alone on the alleged neglect in properly guarding the elevator with gates, it might be necessary to reverse, for the reason that there was no evidence to sustain that charge of negligence; but there is another charge of negligence, and the record fails to show upon which charge the verdict is based. Appellee testified to a state of facts from which the jury could have found that the east gate was up and that he fell into the elevator shaft because of the failure of appellant to properly light the place. The jury saw this witness and heard him testify. They evidently believed him. Their verdict bears the approval of the trial judge, and while the preponderance of the evidence seems to be with appellant, we hold the evidence is sufficient to sustain the verdict.

The fact that there was a passageway along the east and south sides of the elevator that appellee could

have taken with safety does not, as a matter of law, render him contributorily negligent in failing to use that way.

The evidence being sufficient to sustain the verdict, it follows that the court did not err in refusing to give an instruction directing a verdict for appellant.

Complaint is made of the refusal to give appellant's requested instruction 11, which, if given, would have told the jury that if it found appellee suffered the injuries of which complaint is made because the east gate was raised and not down so as to guard the entrance to the east side of the elevator, and that this was true because the automatic device, used to trip the gate and let it down so as to guard the shaft when the elevator was raised, suddenly and unexpectedly failed to work, and that appellant did not know such device was not properly working, and, in the exercise of reasonable care, could not have known of that fact in time to have avoided the accident, appellant was not guilty of negligence in that respect, and that, in so far as that charge of negligence was concerned, its verdict should have been for the defendant. No other instruction covering the subject-matter of this requested instruction was given. In view of the evidence that the device in question had been in use for 20 years, during which time it had never failed to properly function, the requested instruction or one similar in character should have been given.

The court also refused to give appellant's requested instruction 12, which was to the effect that appellant was not an insurer of the safety of its place of business, and that it was required to use only reasonable care in protecting appellee from injuries. The latter part of this instruction was covered by other instructions given, but the first part was not.

Appellant was entitled to an instruction that it was not an insurer of appellee's safety.

Other questions are discussed, but they are such that they are not likely to arise on a second trial, and, for that reason, we give them no consideration. Because of the error in refusing to give appellant's requested instructions 11 and 12, the cause is reversed, with directions to sustain appellant's motion for a new trial and for further proceedings.