**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James W. FOZO and MiEddie Thomas,
Defendants–Appellants.**

**Nos. 89–1528 and 89–1529.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1989.

Decided June 14, 1990.

Andrew B. Baker, Jr., Hammond, Ind., Clifford D. Johnson, Asst. U.S. Attys., Office of the U.S. Atty., South Bend, Ind., Dennis J. Dimsey, James P. Turner, Asst. Atty. Gen., Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, D.C., Marie K. McElderry, Washington, D.C., for plaintiff-appellee.

Victor L. McFadden, McFadden & McFadden, South Bend, Ind., for defendants-appellants.

Before RIPPLE, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

James W. Fozo was convicted of willfully making false declarations before a grand jury in violation of 18 U.S.C. § 1623. Mi-Eddie Thomas was convicted of two counts of violating 18 U.S.C. § 1623 and of conspiracy to willfully make false declarations before a grand jury in violation of 18 U.S.C. § 371. Fozo received a sentence

within the range set forth in the United States Sentencing Commission Guidelines ("Guidelines"). Thomas received a sentence in excess of the Guidelines range. Both men appeal the convictions and Thomas also appeals his sentence. We affirm.

## I. BACKGROUND

On October 25, 1987, the defendants Fozo and Thomas and two other men, Bruce Scott and Tim Kruk, got together in Fozo's driveway. They talked about ways to prevent a black family from moving into their all-white neighborhood. They discussed burning or damaging the house that the black family had agreed to purchase. After a while, Fozo, Thomas, and Scott agreed to meet at 1:00 a.m. in Thomas' garage and then "trash" the house. Later, Scott called Thomas and backed out.

That night a racial epithet was painted on the front of the targeted house. The following night the rear of the house was vandalized with spray paint. These tactics were effective and the black family rescinded its agreement to purchase the house. Subsequently, the FBI conducted interviews and inquired into the events surrounding the racial harassment.

In February, 1988, a federal grand jury began an investigation into the incidents and subpoenas were issued for the appearance of the wives of Fozo, Thomas, and Kruk. On February 4, the four men met in Scott's basement and discussed the impending grand jury investigation. They talked about sticking to a fabricated story and not mentioning the discussions at the October 25 meeting about damaging the house. Thomas and Kruk drove home together from the February 4 meeting and engaged in further discussion concerning the impending grand jury investigation.

Fozo went before the grand jury on March 10, 1988. He denied that he had been involved in a conversation in which anyone discussed ways to prevent the black family from moving into the neighborhood.

Thomas appeared before the grand jury on April 14, 1988. He denied that there had been any discussions about damaging the house. Thomas recounted that at the February 4 meeting the four men had agreed to tell the truth to the grand jury and that the truth was that they did not do anything improper. He stated that there was no discussion about what would not be revealed to the grand jury.

The grand jury indicted Fozo and Thomas. Each of them was charged with one count of conspiracy to deprive citizens of civil rights, one count of conspiracy to make false statements before a grand jury, and two counts of making false declarations to a grand jury. The two counts of making false declarations to the grand jury dealt with the two meetings held by the neighbors, the first relating to the denial of discussions on October 25, and the second concerning the statements made on February 4. Fellow neighbors Scott and Kruk eventually pleaded guilty to misdemeanors and testified as government witnesses.

Following a five-day jury trial, Thomas was convicted of one count of conspiracy to make false statements before a grand jury and two counts of making false declarations to a grand jury. Fozo was convicted of one count of making a false declaration to a grand jury relating to the denial of discussions on October 25. Both defendants filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). The district court denied the motions.

Fozo received a sentence of fourteen months of imprisonment and a fine of $4,000.00. The sentence was within the range of 12–16 months set by the Guidelines. In sentencing Thomas, the court concluded that it was appropriate to depart from the Guidelines range of 12–16 months and imposed a sentence "slightly in excess of the Guideline range." Specifically, Thomas received a sentence of imprisonment of 18 months and a fine of $4,000.00.

On appeal, Fozo contends that the evidence was insufficient to permit a jury to find beyond a reasonable doubt that his answers to the grand jury were intentionally false. Thomas contends that the evidence was insufficient to permit a jury to find him guilty beyond a reasonable doubt

and that the court committed error by admitting evidence which was unduly prejudicial. Thomas also contends that the upward departure from the Guidelines range was error. Both defendants claim that the verdicts were improper because the jury hurried its decision due to the impending Christmas weekend.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

■ In reviewing a criminal conviction, we must view the evidence and all reasonable inferences therefrom in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Jeffers*, 520 F.2d 1256, 1269 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). We can reverse a criminal conviction only when the prosecution has clearly failed to sustain its burden. *Burks v. United States*, 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); *United States v. Jones*, 696 F.2d 479, 490 (7th Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). Indeed, we must uphold a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Grier*, 866 F.2d 908, 922 (7th Cir.1989).

### 1. *Fozo*

■ Count Three of the indictment charged that Fozo made a false declaration to the grand jury when he denied that anything was said or any plans were made during the October 25 meeting about how to keep the black family out of the neighborhood. The jury found him guilty of this count and Fozo now argues the evidence was insufficient to support this verdict. We disagree and affirm his conviction.

The testimony of Scott was sufficient to support the jury's verdict. Scott testified that the purpose of the discussion about burning the house was to keep the black family from purchasing the residence and that there was no doubt in Scott's mind that the four men wanted to keep the black family out of the neighborhood. Scott testified that he, Fozo and Thomas agreed to meet at Thomas' garage at 1:00 a.m. in preparation for "trashing" the inside of the house being sold to the black family. This testimony is sufficient evidence to support the verdict. Fozo challenges the credibility of Scott. However, credibility determinations are for the jury. *United States v. Keplinger*, 776 F.2d 678, 684 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Fozo has not satisfied his burden.

### 2. *Thomas*

The jury found Thomas guilty of knowingly making false declarations to the grand jury regarding both his denial of discussions of damaging the house on October 25 and his statements about what was discussed in the meeting of February 4. Thomas was also found guilty of conspiring to make false declarations to the grand jury.

Count Five of the indictment charged that Thomas falsely declared to the grand jury that there was no discussion of damaging the house during the October 25 meeting. As we stated in the discussion of Fozo's arguments, Scott's testimony provided sufficient evidence for the jury to find that the men discussed burning and trashing the house. We affirm Thomas' conviction on this count.

Count Six of the indictment charged that Thomas falsely declared to the grand jury that during the February 4 meeting the only discussion by the participants of what would be told to the grand jury was that they would tell the truth and that there was no discussion about information being withheld from the grand jury. At trial, Kruk testified as follows:

Q. During [the February 4 meeting] was there any discussion about a grand jury investigation?

A. Well, we all decided if we were going to get a subpoena to the grand jury we better stick with the story as far as not telling about the discussion [on October 25 about "trashing" the house], it wouldn't look too good especially after something was done.

Q. Would it be fair to say that you guys decided not to change your stories?

A. Yes, it would.

This testimony and testimony by Scott provided sufficient evidence to support the jury's conviction on this count.

■ Count Two of the indictment charged that Thomas conspired to willfully make false statements to the grand jury. The only element in issue here is whether there was sufficient evidence before the jury for it to conclude that an agreement to give false testimony was reached between Thomas and someone else during the February 4 meeting.

In addition to Kruk's testimony that the men all agreed to stick to their story and not tell about the discussion on October 25 if subpoenaed, there was further evidence regarding an agreement by Thomas. Kruk testified that while he and Thomas were riding home from the February 4 meeting, Thomas said, "Hey, if Bruce [Scott] does say something don't forget us three should stick together and not change our story any." In light of our deference to the verdict of a jury, we hold that the combined testimony was sufficient evidence for the jury to find that Thomas agreed to lie to the grand jury.[1]

### B. *Thomas' Claims of Unfair Prejudice*

■ Thomas argues that the district court erred by admitting testimony of Kruk which allowed the jury to hear that Thomas became angry and threw an object to the ground when informed that Kruk had told the grand jury the truth about the October 25 and February 4 meetings. Thomas contends that his explanation of his anger would have been prejudicial because he was actually angry at being falsely accused by an acquaintance of painting the racial epithet on the house. In essence, Thomas is arguing that this testimony should have been excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice.[2] Such a determination is left to the discretion of the district judge and we will reverse only if that discretion has clearly been abused. *United States v. Allen,* 798 F.2d 985, 1001 (7th Cir.1986). The testimony was relevant to prove the willfulness element relating to the conspiracy charges. Its probative value was not substantially outweighed by the prejudicial effect of the disclosure of Thomas' anger. The district court did not abuse its discretion.

Similarly, Thomas argues that he was prejudiced by the admission into evidence of an exhibit containing answers to the allegations set forth in the indictment. The responses to the allegations or "script" had been written by Thomas for Fozo's use during his trial testimony. The government argued the "script" was designed to produce answers by Fozo consistent with those of Thomas, and thus the exhibit demonstrated consciousness of guilt of both defendants. Thomas argues he wrote the answers because of Fozo's spelling difficulties and the admission of the exhibit was error because Fozo's testimony was also consistent with Kruk's testimony. Again, the probative value of the evidence was not substantially outweighed by the prejudicial aspect of the disclosure. There was more than one interpretation which could have

---

1. Both Fozo and Thomas argue that the district court erred by denying their motions for acquittal under Federal Rule of Criminal Procedure 29. However, as our discussion here indicates, there was sufficient evidence for the jury to convict the defendants and the district court did not abuse its discretion by denying the motion.

2. Rule 403 reads as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

been (and was by counsel) given to the action of Thomas with regard to the "script." The district court did not abuse its discretion by admitting the exhibit.

### C. Impact of the Christmas Holiday on the Jury Deliberations

■ Jury deliberations in this case began at 2:50 p.m. on Friday, December 23, and lasted nearly four hours. Both Fozo and Thomas argue that the impending Christmas holiday caused the jury to rush its deliberations and improperly reach a guilty verdict. The defendants raised this claim in their motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) and now, on appeal, cite Federal Rule of Evidence 606(b) [3] as a basis for claiming that the district judge erred in failing to conduct a post-trial hearing on the issue. The defendants argue that the district judge should have conducted a post-trial hearing which would have involved questioning members of the jury about the effect of the Christmas holiday on the pace of their deliberations.

Under narrow circumstances the procedure a court employs with regard to the management of the jury during its deliberations may raise an issue of coercion which, upon timely objection, would be subject to review. See e.g., United States v. Murvine, 743 F.2d 511, 515–16 (7th Cir.1984). However, any claim of coercion based on the upcoming holiday period was waived by the failure of the defendants to object to the submission of the case to the jury on December 23.[4] Moreover, as the district judge noted in his Order and Memorandum denying the Rule 29(c) motion, the duration and timing of the jury's deliberations cannot be challenged in a motion for judgment of acquittal. The sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain a conviction. See Wright, Federal Practice and Procedure, Crim.2d § 466 (1982).

■ Concerning defendants' argument on appeal that Rule 606(b) required the district judge to conduct a post-trial hearing on their theory that the impending holiday constituted an "outside influence" which was "improperly brought to bear" upon the jury, they are simply wrong. The invalidating of a verdict may be pursued under Rule 606(b) on the limited basis that prejudicial extraneous influence or information was injected into or brought to bear upon the deliberation process. However, while a juror may testify describing the extraneous influence or information, a juror may not testify about its impact. Smith v. Phillips, 455 U.S. 209, 215–16, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). Thus, the only information which could be obtained from a juror in this situation would be whether or not the juror was aware the Christmas holiday was impending. This is obviously not the type of "outside influence" contemplated by Rule 606(b). Such factors as the timing or length of jury deliberations and other jury management techniques which are unrelated to allegations of improper contact are not cognizable under Rule 606(b).

---

**3.** The brief of defendants-appellants actually cites Federal Rule of "Criminal Procedure" 606(b), but they obviously refer to Federal Rule of Evidence 606(b) which reads:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improp-

> erly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. Fed.R.Evid. 606(b).

**4.** The fact that busy federal courts find it necessary to conduct the trial of cases in close proximity to holidays is insufficient, in and of itself, to give rise to a presumption that a jury was improperly coerced in returning a verdict. Specifically, in this case, the record discloses nothing that would indicate the jury was coerced to return a guilty verdict merely because deliberations commenced and concluded on December 23.

## D. *Propriety of Thomas' Sentence*[5]

■ Thomas was sentenced to 18 months of imprisonment. This term is two months greater than the maximum of the Guidelines range for his convictions. The district judge departed because he found Thomas unlawfully attempted to influence Fozo's testimony by preparing a "script" for him to use in his trial testimony. Thomas challenges the sentence on the ground that it was inconsistent for the court to depart from the range, based on the use of the "script," for Thomas but not for Fozo.

The district judge, after consideration of the demeanor of the defendants, made a factual finding and determined that Thomas had taken advantage of Fozo's request for assistance—a request based on Fozo's spelling difficulties. The court found that Thomas attempted to influence Fozo's testimony through the use of the "script." The court properly considered the actions of each defendant and found one culpable and the other not culpable under these circumstances. Thus, there was no anomalous treatment with regard to the sentences imposed. The district judge correctly utilized Application Note 1(d) to § 3C1.1 of the Guidelines which refers to one defendant "unlawfully attempt[ing] to influence a co-defendant". The departure was warranted under Application Note 4 to § 3C1.1. Note 4, as applicable to Thomas,[6] reads in part:

> In cases in which a significant further obstruction occurred during the investigation or prosecution of an obstruction offense itself [which includes unlawfully attempting to influence a co-defendant],

5. Fozo was sentenced within the range set forth by the Guidelines. In the defendants' brief to this court, Fozo makes a meritless argument challenging his sentence. At oral argument, however, Fozo's counsel conceded that the sentence was appropriate.

6. This Application Note was subsequently amended, but the amendment did not become effective until November 1, 1989. *See* United States Sentencing Commission, *Guidelines Manual*, App. C, amendment 252 (Nov.1989).

7. In *United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989) the court discussed the "reasonableness" standard of 18 U.S.C. § 3742(e)(3) under which we review upward departures from

an upward departure may be warranted (e.g., where a witness to an obstruction offense is threatened during the course of the prosecution for the obstruction offense).

Thus, we find the departure by the district court was reasonable under 18 U.S.C. § 3742(e)(3). *See United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989).[7]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the convictions and sentences of both Fozo and Thomas.

the Guidelines. As part of that discussion, we cited *United States v. Otero*, 868 F.2d 1412 (5th Cir.1989). *Otero* held that, if a sentencing court intends to base an upward departure on a factor not raised in the presentence report, it must give the defendant notice and an opportunity to address this issue. *Miller*, 874 F.2d at 471 (citing *Otero* ); *see also United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989).

Although, on our facts, Thomas had notice that the "script" incident might be used to enhance his sentence (because the government used this incident to argue for a two-level obstruction of justice enhancement), we mention this notice requirement for the benefit of district judges considering an upward departure from the Guidelines.