John HAUGH, Plaintiff–Appellant,

v.

JONES & LAUGHLIN STEEL CORPORATION, Defendant–Appellee.

No. 86–1530.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1991.

Decided Nov. 22, 1991.

Leonard Ring, Margaret A. McGuire (argued), Ring & Associates, Chicago, Ill., for plaintiff-appellant.

Terrence L. Smith, Lawrence M. Hansen (argued), Smith & Debonis, East Chicago, Ind., for defendant-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and MORAN, Chief Judge.*

POSNER, Circuit Judge.

This is an appeal (long delayed by virtue of the defendant's bankruptcy and the resulting automatic stay only recently lifted) from a judgment for the defendant entered upon a directed verdict in the second trial of a diversity personal-injury suit. The first trial ended in a jury verdict of $85,000 for the plaintiff, but the district judge granted the defendant's motion for a new trial on the basis of an improper communication by the marshal to the jury during the jury deliberations. The evidence was somewhat different at the second trial and persuaded the judge to grant the defendant's motion for a directed verdict (which he had denied at the first trial) on the twin grounds that the defendant had owed no duty of care to the plaintiff and that, in any event, the evidence showed conclusively that the plaintiff had been contributorily negligent—which at the time of the accident was a complete defense to liability. Indiana has since replaced contributory negligence with comparative negligence, whereby a plaintiff's own negligence is only a partial defense unless that negligence is adjudged more than 50 percent responsible for the accident; but the stat-

* Hon. James B. Moran, of the Northern District of Illinois, sitting by designation.

ute is not retroactive. *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1057 (7th Cir.1987); *Justice v. CSX Transportation, Inc.*, 908 F.2d 119, 121 (7th Cir.1990). The plaintiff's appeal seeks reinstatement of the first jury's verdict on the ground that the grant of a new trial violated Rule 606(b) of the Federal Rules of Evidence, and alternatively a new trial—a third trial—on the ground that the grant of a directed verdict was improper because a reasonable jury could have found that the defendant owed the plaintiff a duty of care and that the plaintiff was not contributorily negligent.

At the time of the accident, in 1980, John Haugh was employed by Eichleay Corporation, which had a contract with Jones & Laughlin Steel Corporation to furnish workers and materials for making repairs at J & L's mill in East Chicago, Indiana. Haugh's particular job was to remove any generator needing repairs and replace it with a steel shaft (weighing almost a ton) to maintain a connection with the remaining generators, and then in turn to remove the shaft when the generator was ready to be reinstalled after having been repaired. It was in the course of his removing a shaft that the accident occurred. Although the contract between Eichleay and J & L gave Eichleay complete responsibility for the removal of generators and shafts incidental to the repair function for which it had been hired, the practice was for employees of J & L, not of Eichleay, to do the preliminary rigging. So when on the day of the accident Haugh approached the shaft that he had been ordered to remove, he found as usual that most of the bolts connecting the shaft to the generator had already been removed and a chain hoist had been affixed to a choke (cable) that had been wrapped around the shaft. Unfortunately, the cable had not been tightened around the shaft; it had no choking action. Haugh didn't notice this, and when, having removed the remaining bolts, he drew on the chain hoist to pull the shaft out from between the generators, the shaft slipped out of the cable and fell on him, injuring his arm. He had long experience in the job and admitted on cross-examination at both

trials that if he had looked closely at the rigging he would have seen it was defective. The suit is against J & L for the negligence of its employees in rigging the shaft improperly, suit against Eichleay being barred of course by the workers' compensation statute.

On the very evening of the day on which the first jury rendered its verdict for Haugh and was discharged, the jury foreman wrote the district judge complaining that the marshal who had shepherded the jurors during their deliberations had told them that there was no such thing as a hung jury and that they would be kept in custody for as long as it took them to reach a verdict. The letter prompted the judge to hold a hearing at which he questioned the marshal and each of the eight jurors. The foreman repeated what she had said in the letter. The marshal denied having made the precise statement attributed to him but admitted having said "You just have to keep deliberating" when asked by a juror how long the jury would have to stay in the courthouse if it couldn't reach a verdict. Four of the jurors agreed with the essentials of the foreman's version of the marshal's statement. So did two others but they were unsure who had made the statement. The remaining juror had not heard the statement at all. The judge found as a fact that the marshal had made the statement described by the foreman and that several of the jurors had heard it, and he further found that there was a reasonable possibility that the jury as a whole had been influenced by it.

We must uphold the first finding—that the marshal made the statement that the jury foreman attributed to him—unless it was clearly erroneous, *United States v. Green*, 779 F.2d 1313, 1322 (7th Cir.1985); *Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir.1984) (per curiam); *United States ex rel. Buckhana v. Lane*, 787 F.2d 230, 236 (7th Cir.1986), and the second unless it was an abuse of discretion. *United States v. Best*, 939 F.2d 425, 429 (7th Cir.1991) (en banc); *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir.1982) (en banc). Abuse of discretion is conventionally regarded as a

more deferential standard than clear error, though whether there is any real or consistent difference has been questioned, *United States v. McKinney*, 919 F.2d 405, 422–23 (7th Cir.1990) (concurring opinion); Henry J. Friendly, "Indiscretion About Discretion," 31 *Emory L.J.* 747 (1982). The alternative view is that both standards denote a range rather than a point, that the ranges overlap and maybe coincide, and that the actual degree of scrutiny in a particular case depends on the particulars of that case rather than on the label affixed to the standard of appellate review. See also *River Road Alliance, Inc. v. Corps of Engineers*, 764 F.2d 445, 449 (7th Cir.1985); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 388–89 (7th Cir.1984). (Consistent with this suggestion, *Owen v. Duckworth* collapses the two standards into one, that of clear error, flexibly conceived. 727 F.2d at 646.) Whatever the standard is called, appellate judges properly give great weight to the trial judge's assessment of the impact of an improper communication on the jury because he has the inestimable advantage over the appellate judges of having actually observed the jurors. *United States v. Bruscino, supra,* 687 F.2d at 941.

■ A marshal—whose official position makes him likely to be believed—commits a serious impropriety when he tells a jury that it will be locked up till it renders its verdict, however long that may take. That *was* the practice in the eighteenth century. Jurors were "prisoners of the court." *Kennard v. State*, 177 Md. 549, 554, 10 A.2d 710, 712 (Ct.App.1940). Or virtual prisoners: Blackstone explains that "if the jurors do not agree in their verdict before the judges are about to leave the town, though they are not to be threatened or imprisoned, the judges are not bound to wait for them, but may carry them round the circuit from town to town in a cart," 3 *Commentaries on the Laws of England* 376 (1768). See *McHenry v. United States*, 276 Fed. 761, 763 (D.C.Cir.1921). As recently as half a century ago, a judge told a jury that it would have to deliberate without heat in the jury room if it couldn't come to a verdict. *Mead v. City of Richland*

*Center*, 237 Wis. 537, 539–41, 297 N.W. 419, 421 (1941). But those days are no more. And the judge did not commit a clear error in disbelieving the marshal's denial.

■ The problem comes with the evidentiary basis for the judge's further finding, equally critical, that the marshal's statement was likely to have changed the jury's verdict. Rule 606(b) of the evidence rules, far from giving a judge carte blanche in questioning a jury about its verdict, forbids him to inquire into the jurors' beliefs, opinions, discussions, grounds, etc., save as necessary to determine the existence and content of any unauthorized communication made to the jury. The proper procedure therefore is for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly it said, to determine—without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion—whether there is a reasonable possibility that the communication altered their verdict. *United States v. Fozo*, 904 F.2d 1166, 1171 (7th Cir.1990); *United States v. Schwartz*, 787 F.2d 257, 261 (7th Cir.1986); *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983). The rationale for so sharply limiting the impeachment of jury verdicts, set forth at length in *Tanner v. United States*, 483 U.S. 107, 117–27, 107 S.Ct. 2739, 2745–51, 97 L.Ed.2d 90 (1987), has been criticized, though more for its limiting impeachment to unauthorized communications than for its forbidding the questioning of jurors about the impact of such communications on their thoughts and deliberations. Susan Crump, "Jury Misconduct, Jury Interviews, and the Federal Rules of Evidence: Is the Broad Exclusionary Principle of Rule 606(b) Justified?" 66 *N.Car.L.Rev.* 509 (1988); Albert W. Alschuler, "The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts," 56 *U.Chi.L.Rev.* 153, 223–29 (1989). We are in any event not authorized to change the rule.

In *United States ex rel. Buckhana v. Lane, supra,* 787 F.2d at 238–39, however, a panel of this court, after quoting approvingly from *Wiedemann* the statement that Rule 606(b) "prohibits jurors from giving post-verdict testimony as to whether their deliberations, in fact, were prejudiced by the extraneous information or outside influence" (722 F.2d at 337), approved the eliciting of just such testimony. We are not able to reconcile this part of *Buckhana* either with Rule 606(b) or with our other decisions interpreting the rule, which make clear that the trial judge is not to make his determination of prejudice by asking the jurors, as in *Buckhana,* whether the communication altered their verdict, their discussions, etc. (Actually the judge in *Buckhana* permitted the lawyers to ask the jurors these things rather than putting the questions to them himself, but this makes no difference.) Such questions invade the privacy of the jury beyond what is necessary to determine whether there has been a miscarriage of justice. They are forbidden. If (were it not for this prohibition) "jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict," *McDonald v. Pless,* 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915), likewise they "would be harassed and beset" by the victorious party in an effort to defeat the loser's effort to get the verdict set aside because of an improper communication to the jury.

The rule forbidding the questioning of jurors concerning the impact of improper communications is the law not only in this circuit but in every other circuit in which the question has arisen. *Mahoney v. Vondergritt,* 938 F.2d 1490, 1492 (1st Cir.1991); *United States v. Moon,* 718 F.2d 1210, 1235 (2d Cir.1983); *United States v. Small,* 891 F.2d 53, 56 (3d Cir.1989); *Stockton v. Virginia,* 852 F.2d 740, 744–46 (4th Cir.1988); *United States v. Ortiz,* 942 F.2d 903, 909 (5th Cir.1991); *United States v. Maree,* 934 F.2d 196, 201 (9th Cir.1991); *Capps v. Sullivan,* 921 F.2d 260, 263 (10th Cir.1990); *United States v. Sjeklocha,* 843 F.2d 485, 488 (11th Cir.1988); *United States v. Brooks,* 677 F.2d 907, 913 (D.C.Cir.1982) (per curiam). *Buckhana* stands alone (save for doubts expressed by Judge Widener, dissenting in part in *Stockton v. Virginia, supra,* 852 F.2d at 750, about whether Rule 606(b) "should be applied over literally so as not to permit the State to introduce at least some evidence from the jurors who heard any remarks by Puckett [the extraneous communicant] to say whether or not such remarks had any effect on them personally, this without invading the deliberations in the jury room and so as to uphold, not impeach, the verdict"). No decision in this or any other circuit has cited *Buckhana* for the proposition that Rule 606(b) permits questioning jurors about the impact of improper material on their deliberative process. *Fozo* ignores it. Several cases, illustrated by *United States v. Castello,* 830 F.2d 99, 101 (7th Cir.1987) (per curiam), and *United States v. Talkington,* 875 F.2d 591, 596–97 (7th Cir.1989), cite it for different propositions. And both *United States v. Sababu,* 891 F.2d 1308, 1334–35 (7th Cir.1989), and *United States v. Allen,* 736 F.Supp. 914, 918 (N.D.Ill.1990), cite *Buckhana* as authority *against* allowing the questioning of jurors concerning the impact of extraneous communications. We hereby overrule *Buckhana* to the extent of its inconsistency with the present opinion, and we have therefore circulated this opinion to the full court in advance of publication. 7th Cir.R. 40(f). No judge voted to hear the case en banc.

The judge strayed across the admittedly rather indistinct line that we have sketched, for example when he asked one juror: "Let me ask you this. The reason that you agreed to the verdict that ultimately was rendered ..., for what reason did you do that, because you believed in the verdict or that you wanted to go home?" There is no indication that the judge tried to put the juror's answer ("Because they wanted to go home") out of his mind when he came to decide whether there was a reasonable possibility that the jury had been swayed by the improper communication.

So there was error; what is to be done? One possibility would be to remand for a further hearing before the judge. But that would be futile because it would be unrealistic to expect him to erase the impression that the jurors' answers had made on him; nor is it irrelevant that the case is already a decade old. In the circumstances we think we should make our own judgment, and it is that, given the judge's unassailable finding that the jurors heard and believed the marshal's statement, there was indeed a reasonable possibility that it affected the verdict. The case—we know from the outcome of the second trial—was very close; Haugh might easily have lost. But many of the jurors may have thought that if any of them held out for a verdict for the defendant—or even just voiced doubts about the merits of Haugh's case—that juror would be condemning himself and the other jurors to indefinite imprisonment in the jury room of the federal courthouse in Hammond, Indiana. Such a threat was bound to distract and confuse the jury's deliberations. The jury foreman herself took the lead in bringing the matter to the judge's attention, unlike the usual case, where the inquiry is stimulated by the losing party.

■ So the judge was right to grant a new trial and the next question is whether he was also right to grant a directed verdict for the defendant. We think not. The argument over this question has been immensely confused by J & L's insistence on invoking the intricate rules of tort liability of landowners. *Davis v. United States*, 716 F.2d 418, 424–26 (7th Cir.1983). Those rules concern the concept of duty. Negligence is the breach of a duty of care; so there must be a duty before there can be a finding of negligence. There is much old and some new learning on the range of duties that landowners owe the various categories of entrants onto their land—trespassers both adult and child and both deliberate and inadvertent, licensees, social guests, business invitees, public officers engaged in the performance of their duties, and so on. Haugh was a business invitee. The rule used to be that a landowner was liable for injury to a business invitee caused by a dangerous condition on the land only if the landowner had superior knowledge of the danger. The rule has been changed—in Indiana by *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind.1990), which as we read it assimilates the landowner's duty in such a case to the general duty to avoid negligence. The question in the present case, however, is not whether J & L provided a safe place for Eichleay to perform the services for which it had been hired. We may assume that it did. The question is not whether J & L as a landowner was responsible for the negligence of its independent contractor. It was not. That is the general rule, *Howard v. H.J. Ricks Construction Co.*, 509 N.E.2d 201, 205 (Ind.App.1987), and none of the exceptions is applicable here. *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936 (7th Cir.1986). Haugh's theory of liability is different. It is that employees of J & L negligently rigged the shaft that Haugh had been told by his own employer to move. For this negligence by employees of J & L, to which the site of the accident and hence J & L's status as a landowner is irrelevant and its duty of care simply the duty that everyone has (prima facie) to avoid a careless act that injures another person, J & L is liable under the doctrine of respondeat superior unless Haugh was contributorily negligent or some other defense to liability is in play (none is). It makes no difference that the contract between J & L and Eichleay assigned responsibility for the rigging to Eichleay. If you undertake an activity, whether or not you are required to do so, you must carry it through nonnegligently. *Trevino v. Union Pacific R.R.*, 916 F.2d 1230, 1237 (7th Cir.1990); *Erie R. Co. v. Stewart*, 40 F.2d 855 (6th Cir.1930).

■ Haugh's contributory negligence would be a complete defense, but it is not proved merely by evidence that he could have prevented the accident by inspecting the rigging. Accident victims almost always can as a matter of physical possibility prevent accidents to themselves. Pedestrians could wear helmets, or refuse to cross at intersections if there was any traffic even if the light was with them, or cower

at home. The failure to protect oneself from an accident is contributory negligence only if there is a duty to protect oneself in the particular circumstances, which means only if due care requires self-protection in the circumstances. *Clark Fruit Co. v. Stephan,* 91 Ind.App. 152, 158–59, 170 N.E. 558, 560 (1930).

Whether it did here remains unclear despite Haugh's concessions on cross-examination. Ordinarily a person is not deemed contributorily negligent for failing to take precautions against the negligence of others. *Lincoln Operating Co. v. Gillis,* 232 Ind. 551, 557, 114 N.E.2d 873, 876 (1953); *Pilkington v. Hendricks County Rural Elec. Membership Corp.,* 460 N.E.2d 1000, 1004–05 (Ind.App.1984); *Foster v. Buckner,* 203 F.2d 527, 530 (6th Cir.1953); *LeRoy Fibre Co. v. Chicago, Milwaukee & St. Paul Ry.,* 232 U.S. 340, 352, 34 S.Ct. 415, 418, 58 L.Ed. 631 (1914) (Holmes, J., concurring); Leon Green, *"Mahoney v. Beatman:* A Study in Proximate Cause," 39 *Yale L.J.* 532, 537 (1930); *cf. Phillips v. Croy,* 173 Ind.App. 401, 405, 363 N.E.2d 1283, 1285 (1977); *Trevino v. Union Pac. R.R.,* 916 F.2d 1230, 1237 (7th Cir.1990). The plaintiff "was not bound to anticipate danger and negligent conditions on the part of defendant or his employees.... He had a right to presume that he was not exposed to danger which could come to him only from a breach of duty by the defendant." *Ziraldo v. W.J. Lynch Co.,* 365 Ill. 197, 201, 6 N.E.2d 125, 128 (1936); see also *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728, 737 (Tex.Civ.App. 1967). The plaintiff's duty is to take the care that is due given the risk of unavoidable accidents, that is, accidents that might occur even without negligence, as in *Tyler v. Nolen,* 144 Ind.App. 665, 670–71, 248 N.E.2d 186, 189–90 (1969). Otherwise, the more careless people were, the greater would be the duty of their potential victims to protect themselves against carelessness. The burden of responsibility for taking care would shift from the careless to the careful and the total costs of accidents and accident prevention would rise. If J & L's riggers had been careful, there would have been no need for Haugh to inspect the rigging himself before moving the shaft. He was not—not as a matter of law, anyway—charged with responsibility for backstopping the exercise of care by the employees of another employer.

Maybe, as J & L argues, the contract with Eichleay placed such a backstopping responsibility on Eichleay and through it on Haugh, *Howard v. H.J. Ricks Construction Co., supra,* 509 N.E.2d at 205–06, though this is too uncertain a question to be resolved at this level on the existing record. Or maybe the case falls within the exception to the principle we have stated for cases in which a danger is so great or so easily averted by minimal victim efforts at self-protection that the failure to self-protect is contributory negligence even if the danger is caused by negligence and would not exist if no one were ever negligent. In such cases there is shared responsibility for avoiding the accident, in recognition that a certain amount of negligence is unavoidable and that rational people adjust to that possibility by taking care against the possibility of negligent as well as nonnegligent injuries. *Pilkington v. Hendricks County Rural Elec. Membership Corp., supra,* 460 N.E.2d at 1005; *Davis v. Consolidated Rail Corp.,* 788 F.2d 1260, 1266 (7th Cir.1986). These are matters for a jury to sort out. The record does not disclose so one-sided a case of contributory negligence as to entitle the judge to take the issue from the jury. So, unfortunately, there must be a third trial unless—as we hope—the parties can settle the case on the basis of the information furnished by two trials (one to verdict) and this appellate decision.

REVERSED AND REMANDED.