UNITED STATES of America,
Plaintiff–Appellant,

v.

Walter BERRY, Jr., Defendant–Appellee.

No. 94–3717.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1995.

Decided Aug. 28, 1995.

Ralph M. Friederich, Asst. U.S. Atty., Thomas Leggans (argued), Office of U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellant.

Patricia Littleton (argued), Carbondale, IL, for defendant-appellee.

Before KANNE and ROVNER, Circuit Judges, and SHABAZ, District Judge.*

KANNE, Circuit Judge.

A jury convicted Walter Berry of one count of unlawful delivery of crack cocaine and acquitted him of an additional count of the same offense. Berry moved for a new trial, alleging that the court improperly allowed the jury to have copies of the government's transcription of a tape-recorded conversation during their deliberations. A new trial was granted and the government appeals.

## Use of the Transcription at Trial

The tape recorded conversation was between Berry and a government informant, Eddie Brown, and it purported to implicate Berry in the crimes with which he was charged. Just prior to the commencement of the trial, the court heard argument on Berry's motion *in limine* which sought to prohibit the government from introducing the tape recording into evidence. Berry claimed that the tape recording was cumulative and not the best evidence. The district judge denied the motion *in limine* as to the government's use of the tape recording. The motion *in limine* also sought to keep the government from providing a transcription to the jury while the tape recording was being played. Berry challenged the accuracy of the government's transcription, claiming that he was improperly named at various places along the margin of the document as one of the speakers. Berry tendered a version of the transcription which deleted his name and inserted a question mark in its place. Subsequently, in the hearing on the motion, the court inquired of the government how the speakers' names were ascertained. The government responded that "Eddie Lee Brown was the one who furnished the name[s] of the various speakers...." The district judge denied the motion *in limine* as to the transcription and advised Berry's counsel that she could attack Brown's credibility as to the identification of the speakers on the tape.

The trial commenced, and, during the government's direct examination, Eddie Brown, the government informant and an acquaintance of Berry, authenticated the tape recording previously marked for identification. At this point Berry renewed his objection to the admission of the tape recording and also renewed his objection to the use of the government's transcription as an aid to the jury. The district judge overruled Berry's objections, admitted the recording into evidence, and indicated he would allow the jury to have copies of the government's transcription while the tape recording was played in open court. The government's transcription was neither marked nor offered for admission into evidence. Berry did not testify that he had reviewed the government's transcription or verify the accuracy of the identification of the speakers shown in the transcription.

The judge then cautioned the jury that the transcription was the government's interpretation of what was contained in the tape recording received in evidence. The jury was also told that the transcription was only an aid or guide to assist in listening to the tape recording. Reminding the jury that the transcription was not evidence, the judge instructed the jury that, if they heard something on the tape different than what the transcription stated, the tape controlled, not the transcription. The jury was not told whether they would be permitted to use the transcription during their deliberations.

## Jurors Retain Transcription

After playing the tape recording, the prosecution resumed Brown's direct examination. Following the conclusion of Brown's testimony, the government continued with its case-in-chief. The transcriptions remained in the possession of the jurors during that day's session. Ultimately, the transcriptions were placed into the jurors' note folders. The transcriptions remained in the jury room overnight and were used by the jury during their deliberations. The tape recording, which had been admitted into evidence, was delivered to the jury room along with other

* The Honorable John C. Shabaz, District Court Judge for the Western District of Wisconsin, sitting by designation.

evidence. It is unclear, however, whether the jury was provided with a tape player and played the tape recording in the jury room.

### Reference to Transcriptions During Deliberations

The jury took six and one-half hours to deliberate and returned split verdicts—an acquittal on one count and a conviction on the other. The judge then asked the jury to retire to the jury room and remain there. Shortly thereafter, as was his custom, the judge and counsel informally engaged the jury in conversation concerning aspects of the trial. At this point it was discovered that the government's transcriptions were in the possession of the jurors. The district judge called the jury back into open court and elicited from them on the record that they had used the government transcriptions during their deliberations and had compared the transcriptions with the tape recording.

### Impact of Transcription on the Verdict

■ A jury verdict is not lightly to be disturbed through a grant of a motion for a new trial. *United States v. Santos,* 20 F.3d 280, 285 (7th Cir.1994). Where a jury examines evidence during deliberations that was not admitted at the trial, the defendant is entitled to a new trial only if there is a reasonable possibility that the documents had a prejudicial effect on the jury verdict. *United States v. Sababu,* 891 F.2d 1308, 1333 (7th Cir.1989).

■ Berry objected to using the transcription at trial because he disputed Brown's identification of his voice on the tape recording. However, presumably because the transcription was not treated as an exhibit (it was not marked, identified, or offered into evidence),[1] its accuracy as to the identity of the speakers was never verified during Eddie Brown's testimony. Berry maintains that, because the government's transcription indicated who talked at what point in the recording, the transcription removed from the jury's consideration the important question whether Berry was involved in the conversation at all.

### Finding of Prejudice

The government asserts, however, that the trial judge did not make a finding on the record of how the transcription might reasonably have impacted the jury to the detriment of the defendant. Such a record is necessary, the government argues, so that we have a basis for deciding whether granting the new trial was an abuse of discretion.

One juror stated on the record that the jury had compared the transcription with the tape recording and that they "actually differed with what the tape said." Presumably in accordance with FED.R.EVID. 606(b), the district judge immediately halted any further discussion by the jurors of the effect the transcription had on their deliberations.[2] Later, in orally discussing the motion for a new trial, the district judge made an observation apparently based on an off-the-record

---

1. In fact, it found its way into the record here loose and accompanied with a yellow "Post–It" note bearing the hand-written message "Transcript of tape. Not admitted as evidence."

If a transcription is to be used as an aid for the jury, it should be marked as an exhibit, identified, and authenticated. If it is to be used by the jury during their deliberations it should simply be admitted. On the other hand, if it is only to be used by the jury during the playing of the tape recording in open court, it should be admitted for that limited purpose. In either case, the transcription becomes a part of the record. An appropriate instruction guiding the jury's use of the transcription should be given. If admission of the marked transcript is refused when tendered, it should also become a part of the record.

2. In *United States v. Fozo,* 904 F.2d 1166, 1171 (7th Cir.1990), we stated that, in examining whether or not extraneous information was in-

jected into the deliberation process, jurors may testify about such information but they may not testify about its impact. In *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914, 917 (7th Cir.1991), we held that the proper procedure with regard to the insertion of extraneous information into the deliberative process is for the judge to limit the questions asked the jurors to whether that information was communicated and what it contained. Then, if extraneous information was communicated, the court must independently determine whether there is a reasonable possibility that the communication altered their verdict—"without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion." *Id.*

comment by a juror. The judge stated that, had it not been for the transcription, the jury would have returned a guilty verdict (on the count of which it ultimately convicted Berry) in fifteen minutes. Thus, we know that the existence of the transcription in the jury room had an impact, but the nature of that impact was left ambiguous.

It is obvious that the district judge was of the view that the presence of the transcription in the jury room and its use by the jury created a reasonable possibility that the transcription had affected the jury's verdicts. Unfortunately, the court's findings went no further, leaving incomplete the final critical step of determining whether that impact might reasonably have been prejudicial to the defendant.

This omission seems to have been caused by a misunderstanding of the language of *Sababu.* Although that case does state at one point that a new trial is required "when there is a 'reasonable possibility' that the documents affected the jury verdict," it goes on to explain that the "crucial factor" in deciding if a new trial is required is whether there was influence prejudicial to the defendant resulting from the jury's exposure to the extraneous documents. *Sababu,* at 1333. As the court in *Sababu* observed, "a new trial is not automatically required whenever a jury is exposed to material not properly in evidence." *Id.* Moreover, in this case, the question of prejudice leading to the grant of a new trial is more complicated because the defendant was acquitted of one count and found guilty of the other.

■ It is, of course, the district judge who is in the best position to determine the potential prejudicial effect of the extraneous documents coming to the attention of the jurors. While this court may review the record and make an independent determination about whether the jurors' use of the transcription had an impact on the jury's verdict adverse to the defendant, that is not our role in the first instance. We said in *Sababu,* "[t]he district court has the primary responsibility for making this determination of prejudice, and an appellate court must review the district court's determination under an 'abuse of discretion' standard." *Id.*

■ It would be an abuse of discretion to set aside the jury's verdict of guilty and grant a new trial if no prejudice to the defendant occurred. Here it appears that the new trial was granted solely because the district judge considered the jurors' use of the transcription to have had an effect on their verdicts—without a determination that the effect was prejudicial. However, merely because of the errant application of *Sababu,* we will not equate the lack of a finding of prejudice with the actual absence of prejudice.

We REMAND this case to the district court so that it may make a determination of whether the use of the transcription by the jury during its deliberations had an impact on the jury's verdict of conviction prejudicial to Walter Berry, Jr.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I agree with the majority that it is not our role to review the record *de novo* to make an independent determination of whether the transcription had an impact on the jury prejudicial to Berry. The trial court must make the initial determination of prejudice, and we review that determination solely for abuse of discretion. I write separately to offer my thoughts on factors the district court may consider in making its determination in the context of the particular facts of this case.

In *United States v. Boyd,* 55 F.3d 239, 242 (7th Cir.1995), we noted that when a trial judge sat through the trial, heard the testimony, and observed the jurors' reactions to the evidence, he would develop a "feel" for the impact of the evidence on the jury and how that impact might have been different in the absence of the evidentiary error. We acknowledged that "an appellate court, confined to reading the transcript, cannot duplicate" that "feel." *Id.* That "feel" is especially important in the instant case, where the jury returned a split verdict.

Berry was charged with two counts of unlawful delivery of a controlled substance. Both counts arose from alleged sales of crack cocaine by Berry to a government informant. The evidence for the two counts was identical

except that on the second sale, the informant wore a wire, and the government therefore had a tape recording of the alleged buy. The jury acquitted Berry on the first count for which no recording or transcription existed, but convicted him on the second count. In light of the acquittal on Count I, it seems highly likely that the tape recording and the government's transcription of the tape recording (which identified Berry as the speaker at key points in the recorded conversation) were instrumental to the jury's verdict on the second count.

Also relevant to the analysis is the impact of the transcription on Berry's defense. Berry's entire theory of defense was that he was not the person who sold the cocaine to Brown, and he was not the speaker on the tape. Thus, the identification of the speaker was the central issue in the case. Berry argued below that the transcription was unfairly prejudicial because, among other things, it identified him as the speaker, and it did not indicate pauses or lapses of time in the recorded conversations. As the majority notes, the trial court rejected Berry's version of the transcription, which removed his name from the margin and inserted a question mark instead. The court allowed the tape to be admitted as evidence and allowed the jury to use the government's transcription as an aid.

In light of the centrality of the issue of identification in the case, it is difficult to imagine evidence that would be more prejudicial to the defendant than a transcription of a conversation in which he allegedly sold crack cocaine to a government informant, where the transcription identifies him as the speaker and the sole issue in the case is who was speaking during the transaction. The trial judge determined that each and every juror used the transcription extensively during deliberations. The majority notes that one juror indicated the transcription may have helped Berry. But there are no comments on the record indicating the effect of the transcription on the other eleven jurors, and this is a matter uniquely within the

province of the trial judge to determine. *Boyd*, 55 F.3d at 242.

In its oral remarks, the district court spoke at length about the inadequacy of instructing the jury that the transcription was not evidence in light of the fact that the transcription mistakenly went back to the jury room and was used extensively by all the jurors. The court also stated that the "government's case is not the strongest case in the world," an acknowledgement that without the error, the jury may have acquitted Berry on both counts, instead of just one. All of this implies that the district court was inclined to believe Berry was prejudiced by the presence of the transcription in the jury room. But because the district court has not yet rendered a definitive assessment, we must remand to allow him to make explicit whether the jury's use of the transcription contributed to Berry's conviction on the second count.

Finally, I am troubled by several aspects of the dissent. First, the dissent quotes out of context the court's remarks reflecting the off-the-record comments of one juror (that the transcription actually helped Berry). As I have already noted, we do not know the effect of the transcription on the other eleven jurors. Second, the dissent misconstrues two unrelated comments of the court in order to claim a remand would be futile because the court could not set aside remarks jurors made off the record. In fact, the court remarked that the *jurors* were not able to erase from *their* minds the effects of the transcriptions. The court's comment supports affirmance, not reversal. Third, the dissent's reading of the court's comments requires us to assume the trial court committed an utterly irrational act—granting a new trial when he believed that the transcription actually helped Berry. I am not prepared to assume, without any support in the record, that a learned and fair-minded judge would grant a new trial on an irrational basis.

Fourth, the dissent sets a standard that would allow anything presented during trial to be used during deliberations, whether it was properly admitted as evidence or not.[1]

---

1. The dissent's comment that to the extent the transcription is accurate, "it is merely cumulative" is mystifying. Berry's entire theory of defense was that the transcription was *inaccurate*

This view contravenes a body of law which recognizes that the decision whether to permit a transcript or other item into the jury room is a question committed to the district court's discretion and one entirely independent from the decision whether it should be admitted at trial, which is governed by separate considerations. *See e.g. United States v. Hofer*, 995 F.2d 746, 749 (7th Cir.1993) (trial court has broad discretion in deciding whether to permit jury to use transcriptions during deliberations); *United States v. Doerr*, 886 F.2d 944, 966 (7th Cir.1989) (same); *United States v. Zambrana*, 841 F.2d 1320, 1339 (7th Cir.1988) (same). The dissent's view would render this line of cases defunct, collapsing the two questions into one.

Fifth, and most troubling, is the dissent's attempt to change the standard of review from abuse of discretion to *de novo*. We explained in *Boyd* the multitude of reasons why we will not lightly disturb the decision of a trial court to grant a new trial, and I will not repeat those rationales here. However, were I inclined to adopt *de novo* review for this case, I would affirm because the record is replete with evidence of prejudice to Berry caused by the erroneous presence of the transcription in the jury room.

SHABAZ, District Judge, dissenting.

A criminal defendant is entitled to a new trial only when there is a reasonable possibility that the jury's exposure to material not properly in evidence prejudiced it against the defendant. *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir.1989). The majority remands to the district court because it concludes that the record is ambiguous concerning the trial court's determination whether the transcript had a prejudicial effect upon the defendant. Because there is no ambiguity in the record and no reasonable possibility that the defendant was prejudiced by the presence of the transcript in the jury room, I dissent.

The record is clear that the district judge believed that the presence of the transcript in the jury room prejudiced the government by delaying the defendant's conviction.

And what I have decided to do here is that I believe that the extraneous matter, being the transcription, that there was a reasonable possibility that the jury was influenced by way in their deliberations, and that with that finding, the Court is going to grant a new trial.

But I'm not sure I'm doing the defendant any favors, Mr. Berry, and this is one of reasons I want you here, because I have been around long enough to know, as Mr. Friederich knows and as Ms. Littleton will find out as she tries cases, in re-trial of cases, more likely than not, the second jury comes back with the same decision as the first jury. And we're here, and your attorney is possessed with the knowledge that this jury, without the transcription back there, would have returned a guilty verdict on you on the count they found you guilty within 15 minutes ...

There is nothing in the transcript to suggest any finding of prejudice to the defendant—only the suggestion that the jury was *influenced* in its deliberations. We know from his comments that the judge believed this influence to be a benefit to the defendant.

The trial court's ruling also demonstrates the impropriety of a remand. In two separate statements at the hearing on the motion for new trial the judge expressed his concern that it was impossible for him to disregard evidence received outside the bounds of Rule 606(b), Federal Rules of Evidence:

When I questioned the jury and reading the cases on whether or not that was proper, I'm trying to erase that from my mind and not consider it, but we all heard or at least Mr. Friederich and Ms. Littleton and I heard back in the jury room after the jury was discharged what, you know, the effect that this document had. And I can not erase from my mind the fact that that document, extraneous as it was, had a reasonable possibility of influencing the jury in this case.

. . . . .

And I'm not considering the voir dire of the jury that was done outside the presence of the defendant, but this was a tran-

because it identified him as the speaker. There-

fore, the transcription could never be cumulative.

script that was back there, and I want the Seventh Circuit to know, since they're going to be reading this, it is after the jury was discharged the three of us went back there and talked to the jury. And it's very difficult to set aside comments they made with the realities with what we have to do in terms of—the difficulty of striking evidence and telling jurors to erase things from their minds. It's difficult to do.

Recognizing this problem, this Court has previously noted the futility of a remand under circumstances where the trial judge has erroneously been exposed to evidence of the jury's deliberative process.

> So there was error; what is to be done? One possibility would be to remand for a further hearing before the judge. But that would be futile because it would be unrealistic to expect him to erase the impression that the jurors answers made on him ...

*Haugh v. Jones and Laughlin Steel Corp.,* 949 F.2d 914, 919 (7th Cir.1991). The futility is even greater where the judge stated, "I don't think I could explain what I've explained here today in writing as well as I could have explained it verbally and orally." There is nothing more to say.

The proper course under such circumstances is an independent judgment concerning possible prejudice by this Court. *Id.* Clearly, such an independent review reveals that there is no prejudice. The jury already had the transcript during trial and at the time of the playing of the tape. To the extent that the identification of speakers on the transcript influenced the jury that influence already occurred at trial. Furthermore, the jury was instructed that the transcript was not evidence but only the government's interpretation of what was contained on the tape. A more painstaking comparison in the jury room between tape and transcript could only benefit the defendant since it would likely expose discrepancies in the transcript which call into question the credibility of the government's transcriber and witness. Indeed, there was testimony on the record that such discrepancies were uncovered by the jury. Insofar as the transcript was accurate

it is merely cumulative of the tape and can not be prejudicial.

It is important to note that whether the transcript was properly used at trial is not before us on the present appeal. Assuming the propriety of providing the transcript to the jury during trial there is simply no reasonable possibility that its presence in the jury room prejudiced the defendant. The trial court's order granting a new trial should be reversed. Defendant is plainly not entitled to a new trial and a remand is an exercise in futility. Accordingly, I dissent.