**STATE of Indiana and Indiana State Highway Department, Appellants–Defendants,**

v.

**James R. EATON, Shirley Eaton, as Legal and Natural Guardians of Jeffrey J. Eaton, Appellees–Plaintiffs.**

No. 69A05–9402–CV–59.

Court of Appeals of Indiana.

Dec. 28, 1995.

Rehearing Denied Feb. 23, 1996.

Pamela Carter, Attorney General, David F. Hurley, Deputy Attorney General, Indianapolis, for appellant.

G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for appellee.

## OPINION

RUCKER, Judge.

Jeffrey Eaton, a minor, was injured in a collision occurring on a State highway. His

parents, acting as guardians, sued the State on Jeffrey's behalf and also sued on their own behalf for loss of services. After a trial by jury the Eatons received two awards for damages which together exceeded the cap imposed by the Indiana Tort Claims Act. The State now appeals raising four issues for our review which we consolidate and re-phrase as: (1) Did the trial court err in instructing the jury on Jeffrey Eaton's duty of care as a traveler on a public highway? (2) Did the trial court err in prohibiting the State from introducing evidence of Jeffrey Eaton's failure to use protective eyewear, including a full helmet? (3) Did the trial court err in refusing to apply a single statu-tory cap of Three Hundred Thousand Dollars ($300,000.00) to the jury verdicts in favor of the Eatons?

We affirm.

## FACTS

This is the second time this case has come before us for review. The relevant facts were set forth in the first appeal as follows:

On October 2, 1981, a state highway maintenance crew was continuing the work it began the day before, "clipping" the shoulder of U.S. Highway 421 ("Highway") for drainage. [Record Cite omitted]. When clipping a highway's shoulder, a grader pulls up dirt, gravel, and other materials along the edge of the road onto the road. Dust is created when a highway is clipped. A loader loads the dirt onto a dump truck, which hauls the debris away. Normally, a sweeper makes several passes to clear away much of the dirt and gravel left on the roadway.

Warning signs were posted in the vicini-ty of the area in which the crew was clipping. The crew was clipping the High-way from south to north, and much dust was generated by its activities. However, the evidence is conflicting on exactly the amount of dust present: some witnesses testified that the Highway was only slight-ly dusty, while others stated that the dust formed a sizeable cloud on the roadway.

At approximately 2:30 p.m. on October 2, 1981, Jeffrey Eaton ("Jeffrey"), then a high school senior, was driving his motor-cycle home from school on the Highway, traveling in a northerly direction. Jeffrey noticed dirt and dust on the Highway. As he came up over a slight rise in the High-way, he slowed down from his speed of forty (40)—forty-five (45) miles per hour.

A semi-tractor trailer was traveling on the Highway in front of Jeffrey. The evi-dence is unclear regarding whether the trailer was slowing down, stopped, or be-ginning to move after stopping, but the driver stated that he was following a flag-man's directions in the area of the High-way being clipped. The trailer's driver remembers hearing a bang and seeing something in the roadway in his rearview mirror. Upon exiting the trailer's cab, the driver discovered Jeffrey, who had appar-ently run into the rear of the trailer. Jef-frey, who suffered severe neurological inju-ries as a result of the accident, does not clearly remember the day's events, but it appears that Jeffrey's motorcycle collided with the rear end of the trailer.

Jeffrey and his parents brought suit against the State and the owner and opera-tor of the trailer. At trial, they proceeded only against the State, since proceedings against the trailer's owner and operator had previously been dismissed.

*State v. Eaton* (1991), Ind.App., 581 N.E.2d 956, 957–958, *reh'g denied.* The jury re-turned a verdict in the Eatons' favor, but we reversed and remanded the case for a new trial because of a faulty jury instruction. *Id.* In the second trial, the jury again returned a verdict in the Eatons' favor. The jury awarded the Eatons Four Hundred Forty-nine Thousand Two Hundred Eighty Dollars ($449,280.00) as Jeffrey's legal guardians for Jeffrey's personal injuries, and awarded them One Hundred One Thousand One Hun-dred Seventy-eight Dollars and Sixty-four Cents ($101,178.64) as Jeffrey's natural guardians for loss of Jeffrey's services. The trial court reduced the larger award to Three Hundred Thousand Dollars ($300,000.00) in accordance with the Indiana Tort Claims Act, but allowed the loss of services award to stand. This appeal ensued in due course.

## I.

The State first contends the trial court erred in instructing the jury on Jeffrey's duty of care as a motorist on a public highway. The jury was instructed that Jeffrey had a duty to use ordinary care. In so doing the court refused the State's tendered instruction which would have advised the jury that Jeffrey was required to use extraordinary care. In support of its contention the State points out that at the time of the collision Indiana Code § 9–4–1–33 then in effect provided in relevant part:

(a) No driver of a vehicle or motorman of a street car shall disobey the instructions of any official traffic control device placed in accordance with the provisions of this chapter, unless at the time otherwise directed by a police officer.

(b) When traffic control devices or flagmen are utilized at worksites on any public highway for traffic control, all motorists shall exercise extraordinary care to secure the mutual safety of all persons and motorists at the worksite.

The State's tendered instruction tracked the language of the forgoing statute; and the State argues the court erred in rejecting it because the instruction was a correct statement of the law, supported by the evidence, and not covered by any other instruction.

■ The giving of jury instructions is a matter within the trial court's discretion, and we review only for abuse. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343. The refusal of a tendered instruction constitutes reversible error when: (a) the instruction is shown to correctly state the law, (b) the instruction is supported by the evidence, (c) the instruction is not covered by others which were given, and (d) there is a reasonable probability substantial rights of the complaining party have been adversely affected. *Transport Ins. Co. v. Terrell Trucking, Inc.* (1987), Ind.App., 509 N.E.2d 220, 224.

■ Whether the State was entitled to an instruction that Jeffrey had a duty to use extraordinary care depends in part at least on whether there was evidence in the record showing the collision occurred at a worksite.

This is so because ordinarily there are no degrees of care in Indiana, *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, *reh'g denied,* and absent a statute requiring otherwise, the proper standard is ordinary care. At the time of the collision the term "worksite" was defined as "[a] location or area upon which a public purpose construction or maintenance activity, or a private purpose construction or maintenance activity which is properly authorized by a governmental agency, is being performed on a public highway." Ind.Code § 9–4–1–19.5. The location or area comprising a worksite depends on the facts and circumstances of each case. Here, the only evidence of whether the collision occurred at a worksite was provided by the Eatons in their case in chief. Doctor Jack Humpries, a professor emeritus in civil engineering at the University of Tennessee, was qualified by the trial court as an expert in the field of highway safety. Without objection he testified, among other things, that the worksite "is the area where physically work is taking place. It doesn't include the entire stretch of roadway from the first sign to the last sign...." *Record* at 989–990. According to Doctor Humpries the location of the "flagmen" in this case established the outer boundaries of where work was physically taking place on the roadway. The record shows the collision occurred at some distance away from the flagmen and thus not at the worksite. Because the collision did occur at or within a worksite, Jeffrey was only required to use ordinary care while driving his motorcycle. The State's instruction concerning extraordinary care was not supported by the evidence and was therefore properly rejected. We find no error on this issue.

## II.

The State next contends the trial court erred in prohibiting it from introducing evidence of Jeffrey's failure to use protective eyewear including a full helmet. The State argues that Jeffrey had a duty to keep a look out, and not allowing the jury to consider his failure to wear goggles or a helmet with a face shield substantially affected the State's contributory negligence defense.

The trial court is invested with sound discretion in admitting or rejecting evidence, and we reverse only where an abuse of discretion is shown. *Second Nat. Bank v. Sears, Roebuck and Co.* (1979), 181 Ind.App. 1, 3, 390 N.E.2d 229, 231. As the State correctly points out error in the admission or rejection of evidence justifies reversal where the error relates to a material matter or is of a character to substantially affect the rights of the parties. *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148. There is no question that motorists have a duty to keep and maintain a proper lookout when traveling upon a roadway. "A proper lookout has been defined to mean the duty to see that which is clearly visible or which in the exercise of due care would be visible." *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613, 617. Here, however, the State seeks to expand the duty of keeping a proper lookout to include a motorcyclist wearing a helmet with a face shield. According to the State Jeffrey's failure to wear protective face gear, including a helmet, went directly to the issue of causation and Jeffrey's contributory negligence especially because of the Eatons' allegation that dust affected Jeffrey's vision.

First, the State has cited no authority in this jurisdiction standing for the proposition that a motorcyclist has a duty to wear a helmet or protective eyewear. And our own research reveals no such authority.[1] The tort of negligence is comprised of three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, 3) which proximately caused plaintiff's damage. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, *reh'g denied.* Although breach of duty is a question of fact to be determined by the fact finder, whether a duty exists in the first instance is a question of law to be determined by the court. *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802. In determining whether a common law duty exists in the context of a negligence action, we balance three competing factors: 1) the relationship between the parties, 2) the reasonable fore-

seeability of harm, and 3) public policy concerns. *Id.* at 809 citing *Webb v. Jarvis* 575 N.E.2d 992. In this case at least two of the three competing factors militates against imposing a common law duty on a motorcyclist to wear headgear or protective eyewear. Specifically, we cannot say as a matter of law that it was foreseeable that Jeffrey's vision would become impaired by dust and therefore he would be involved in collision. "A motorist is not required to be constantly prepared for every conceivable circumstance, and to insure against every accident." *Brock v. Walton* (1983), Ind.App., 456 N.E.2d 1087, 1091. As for the public policy concerns, our legislature has spoken on this issue. Although before and after this collision a statute was in effect requiring the use of protective headgear when a motorcycle is operated by a person under the age of eighteen,[2] no such statute was in effect at the time of the collision. In sum Jeffrey had no common law duty to wear a helmet or other protective eyewear. Absent a duty, there can be no breach and thus the question of proximate causation is not reached. We find no error on this issue.

### III.

Finally the State contends the trial court erred in refusing to apply a single statutory cap of Three Hundred Thousand Dollars ($300,000.00) to the jury verdicts in the Eatons' favor. The Indiana Tort Claims Act provides in pertinent part:

> The combined aggregate liability of all governmental entities and of all public employees acting within the scope of their employment and not excluded from liability under section 3 of this chapter, does not exceed three hundred thousand dollars ($300,000) for injury to or death of one (1) person in any one (1) occurrence and does not exceed five million dollars ($5,000,000) for injury to or death of all persons in that occurrence. A governmental entity is not liable for punitive damages.

1. We also note that in a majority of jurisdictions, evidence of a motorcyclist's failure to wear protective equipment is inadmissible in the absence of a statutory duty. See 7A Am.Jur.2d. Automobiles and Highway Traffic § 629.

2. Ind.Code § 9893 first enacted in 1967 was repealed April 2, 1977. Now see, Ind.Code § 91971 enacted April 15, 1983.

Ind.Code § 34–4–16.5–4 ("ACT"). The State points out that the Eatons' claim for loss of services is derivative. That is, it came into existence only after Jeffrey was injured and was dependent upon the survival of his claim. As the State also correctly observes, if the jury had found Jeffrey contributorily negligent, then his parents' claim for loss of services would have been extinguished. *See Brown v. Slentz* (1958), 237 Ind. 497, 147 N.E.2d 239.

Although the courts of this state have never addressed the question of whether a single statutory cap is applicable to a derivative claim, the Seventh Circuit Court of Appeals has addressed this precise issue and ruled that it is not. In *Myers v. County of Lake, Ind.* 30 F.3d 847, *cert. denied*, (7th Cir.1994), a juvenile attempted suicide while in the custody of Lake County, Indiana at the County's juvenile detention center. After a trial by jury, the juvenile was awarded Five Hundred Thousand Dollars ($500,000.00) and his father was awarded Four Hundred Thousand Dollars ($400,000.00). Relying on the ACT the trial court reduced both awards to Three Hundred Thousand Dollars ($300,000.00). On appeal Lake County argued that because father's injury was derivative from the son's injury, the total award should have been Three Hundred Thousand Dollars ($300,000.00) rather than Six Hundred Thousand Dollars ($600,000.00). The Circuit Court of Appeals concluded otherwise drawing an analogy from Indiana wrongful death actions in which maximum recovery applies separately to a deceased child and a surviving parent. *Id.* at 853 citing *Andis v. Hawkins* (1986), Ind.App., 489 N.E.2d 78 and *Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711. We agree with the Seventh Circuit's conclusion.

■■ It is true, as the State maintains, that the Eatons' claim for loss of services is derivative in the sense that the Eatons could not have prevailed if the jury had decided against Jeffrey. This is so because the Eatons' injury flowed from Jeffrey's loss. However, the derivative nature of the Eatons' claim is not dispositive of whether the Eaton's are entitled to separate damages under the Act. The wrongful act by which a minor

child is injured gives rise to two causes of action: one in favor of the injured child for personal injuries, and the other in favor of a parent for loss of services. *Buffalo*, (1982), 441 N.E.2d at 714. The cause of action in favor of the child is one for personal injury, while the cause of action to the parent is one for property damage. *Automobile Underwriters v. Camp* (1941), 109 Ind.App. 389, 32 N.E.2d 112, 114. We conclude that a parent's claim for loss of services, although derivative for the purpose of attributing the injured child's negligence to the parent, is nonetheless a separate injury within the meaning of Ind.Code § 34–4–16.5–4 and thus gives rise to a separate right of recovery. The trial court properly declined to apply a single statutory cap to the jury's award of damages.

Judgment affirmed.

BARTEAU and DARDEN, JJ., concur.