**Bernard W. HOPPER and Rettie Hopper, Individually and on behalf of their minor son, George R. Hopper, Appellants–Plaintiffs,**

**v.**

**Roy CAREY, Scott County Highway Department, Continental Western Insurance Co., Lucas Brothers, Inc., and S & S Fire Apparatus Co., Appellees–Defendants.**

**No. 72A01–9809–CV–330.**

Court of Appeals of Indiana.

Sept. 24, 1999.

Donald R. Forrest, Scott & Forrest, New Albany, Indiana, Attorney for Appellant.

Sandra L. Heeke, Smith, Bartlett, Heeke, Carpenter, Lewis & Thompson, Jeffersonville, Indiana, Attorney for Appellee, Scott County Highway Dep't.

John W. Woodard, Jr., Wyatt, Tarrant & Combs, New Albany, Indiana, Attorney for Appellee, Lucas Brothers, Inc.

## OPINION

ROBB, Judge

### Case Summary

Appellants–Plaintiffs, Bernard and Rettie Hopper (collectively "Hopper"), individually and on behalf of their minor son, George Hopper, bring an interlocutory appeal of the trial court's grant of a motion in limine filed by Appellee–Defendant, Lucas Brothers, Inc. We reverse with instructions.

### Issue

Hopper raises one issue for our review which we restate as: whether the trial court properly granted the motion in limine which provided that evidence of failure to wear seat belts is admissible to demonstrate fault.

### Facts and Procedural History

On December 21, 1994, Bernard was driving a fire truck water tanker for the Johnson Township Volunteer Fire Department ("Fire Department"). He was accompanied by another volunteer firefighter, Robert Fergison, and Bernard's son George, and was not on an emergency run. Defendant, Roy Carey, was driving in the oncoming lane and as he passed, the fire truck went off the road onto the shoulder. The road surface had been recently repaved by defendant, Lucas Brothers, Inc. Bernard attempted to return the vehicle to the roadway but oversteered, causing the vehicle to leave the roadway again and overturn. Bernard and George were injured during the accident. The fire truck was equipped with seat belts, but contrary to the Fire Department's rules, none of the occupants were wearing them at the time of the accident.

Hopper filed a complaint seeking damages for the personal injuries received by Bernard and George. The complaint contained a negligence count against Carey, Lucas Brothers, and the Scott County Highway Department ("Highway Department"), and a products liability count against the manufacturer of the fire truck, S & S Fire Apparatus Co.

On May 7, 1998, Lucas Brothers filed a motion in limine requesting an order "that evidence of Bernard Hopper's and George Hopper's failure to wear seat belts is admissible to demonstrate 'fault' on the part of Bernard Hopper and George Hopper." R. 51. The trial court held a hearing and later granted the motion. The trial court

certified the order for interlocutory appeal on August 7, 1998 and this court accepted jurisdiction of the appeal on September 29, 1998.[1]

### Discussion and Decision

### I. Standard of Review

The granting or denying of a motion in limine is within the sound discretion of the trial court. *Jones v. State*, 163 Ind.App. 454, 324 N.E.2d 828, 832 (1975). The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. *City of Indianapolis on Behalf of Dept. of Metropolitan Development v. Heeter*, 171 Ind.App. 119, 355 N.E.2d 429, 439 (1976). It must be noted that ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence.[2] *Id.* Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. *Id.* The standard of review for admissibility of evidence issues is abuse of discretion. *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind.1997), *cert. denied*, — U.S. ——, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Even if a trial court errs in a ruling on the admissibility of evidence, we will only reverse if the error is inconsistent with substantial justice.

### II. Evidence of Fault

Hopper argues that the trial court erred when it granted Lucas Brothers' motion in limine. The trial court's order in limine determined that evidence of seatbelt use would be admissible to demonstrate fault. The present case involves three liability theories: Hopper's complaint against Carey and the Lucas Brothers is governed by the Comparative Fault Act; his complaint against the Highway Department is governed by the common law principle of con-

tributory negligence; and his complaint against S & S Fire Apparatus Co. is a products liability action. We will address Hopper's complaint of error as it relates to each defendant separately.

### A. The Highway Department

Tort claims against governmental entities such as the Highway Department are subject to common law principles of negligence because Indiana's Comparative Fault Act does not apply to such entities. Ind.Code § 34–51–2–2; *Hapner v. State*, 699 N.E.2d 1200, 1205 (Ind.Ct.App.1998). Thus, the common law defenses of incurred risk and contributory negligence are available to such defendants.

In the present case, the trial court ruled that evidence of Hopper's failure to use a seatbelt is admissible to determine fault. The validity of the seatbelt defense has been hotly contested in courts across the country, and the result could hardly be considered a consensus on this issue. *See Clarkson v. Wright*, 108 Ill.2d 129, 90 Ill. Dec. 950, 483 N.E.2d 268 (1985) (holding that a plaintiff does not have the duty to anticipate the negligence of others, and therefore, the plaintiff's failure to use a seatbelt is inadmissible as to either damages or liability); and *Thibeault v. Campbell*, 136 N.H. 698, 622 A.2d 212 (1993) (holding that evidence of failure to wear seatbelt is inadmissible to demonstrate comparative fault where nonuse of seatbelt did not cause the collision); *but see Ridley v. Safety Kleen Corp.*, 693 So.2d 934 (Fla. 1996), as clarified on reh'g, (March 27, 1997) (holding that pursuant to a state statute failure to wear a seatbelt may be raised as an affirmative defense to comparative negligence); and *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993) (holding that pursuant to a state statute, nonuse of a seatbelt may be admissible as evidence concerning mitigation of damages

---

1. Defendants Ron Carey, Continental Western Insurance Co., and S & S Fire Apparatus Co. did not file briefs in this appeal.

2. We note that use of a motion in limine to establish the admissibility of evidence as broadly as attempted here is unusual, but, as discussed *infra*, we think it was a wise decision.

but not as evidence in regard to the issue of liability). The seatbelt defense in Indiana has a rather convoluted history. To aid our discussion of the seatbelt defense as it applies to this case, an outline of that history follows.

### 1. The Seatbelt Defense in Indiana

The first Indiana case to address the seatbelt defense was *Kavanagh v. Butorac*, 140 Ind.App. 139, 221 N.E.2d 824 (1966). In that case, the defendant argued on appeal that the plaintiff's contributory negligence proximately caused his own injury due to the failure to use his seatbelt. The defendant contended that use of the seatbelt would have prevented or minimized the injury. The *Kavanagh* court discussed the doctrine of avoidable consequences and held that although

> failure to use the belts may come into action after the proximate cause, we have no authorities which we believe permit us to invoke that doctrine under the evidence here to avoid or to lessen the damage. We recognize [the] possibility of the doctrine applying in some future date and in some matter where the circumstances are clearer than the instant case in showing that some part of the injury would not have occurred except for the fact that plaintiff failed to avoid the consequence of the tort by not fastening his seat belt.

*Id.* at 830. The court concluded that there was insufficient evidence to hold, as a matter of law, that the use of a seatbelt would have prevented the identical injury, but left for another day the question whether the common law on this may change.

Following *Kavanagh*, the Seventh Circuit United States Court of Appeals encountered this issue in a case arising in Indiana, *Mays v. Dealers Transit, Inc.*, 441 F.2d 1344 (7th Cir.1971). In *Mays*, the court upheld a jury instruction that failure to use a seatbelt established the defense of contributory negligence. The court declined to follow *Kavanagh*, concluding that "the wearing of seat belts is sufficiently involved in the matter of exercise of reasonable care as to be an issue of common law negligence in Indiana under proper circumstances." *Id.* at 1355. This conclusion was based in part on the court's view that in the few years since *Kavanagh*, the general public had become more aware of "the importance for safety of the wearing of seat belts." *Id.* at 1353. The *Mays* court determined that there was sufficient evidence presented to justify giving the challenged instruction.

In *Birdsong v. ITT Continental Baking Co.*, 160 Ind.App. 411, 312 N.E.2d 104 (1974), this court addressed a situation similar to *Kavanagh*. The trial court gave a jury instruction tendered by the defendants which "allow[ed] a reasonable juror to conclude that the law of Indiana sanctions a reduction in the damages claimed by Birdsong in proportion to the degree of negligence the jury assigns to Birdsong's failure to have his seatbelt fastened at the time of the collision." *Id.* at 106. We held that it was reversible error to give this instruction for two reasons. First, because Indiana had not yet adopted the doctrine of comparative negligence, "Indiana law does not recognize degrees of negligence." *Id.* Second, the *Birdsong* court held that the defendant "failed to present any evidence which connected Birdsong's injuries to his failure to have his seatbelt fastened at the time of the collision." *Id.* at 107. In an opinion in which he concurred in result, Judge Lybrook compared the case to *Kavanagh*, in that there was also insufficient evidence to support use of the seatbelt defense. As in *Kavanagh*, however, Judge Lybrook left the door open by admitting his "reluctan[ce] to state that a correct instruction on this subject can never be given." *Id.* at 108–09.

This line of cases continued with *Gibson v. Henninger*, 170 Ind.App. 55, 350 N.E.2d 631 (1976). In *Gibson*, the defendant argued that the trial court erred in failing to give his tendered jury instruction as to whether the plaintiff was negligent in fail-

ing to use a seatbelt. This court noted that neither party called an expert witness regarding the effect of seatbelt use on the injuries sustained by the plaintiff and determined that the defendant failed to carry the "burden to prove that [plaintiff] would not have been injured had [plaintiff] used the seat belt...." *Id.* at 633. The *Gibson* court declined to follow *Mays* because it found that *Kavanagh* was the controlling precedent. This court held that the plaintiff was not guilty of contributory negligence as a matter of law and that the trial court correctly refused the defendant's tendered instruction.

The following year, this court decided *Rhinebarger v. Mummert*, 173 Ind.App. 34, 362 N.E.2d 184 (1977). In that case, it was held to be reversible error to instruct the jury that it could find the plaintiffs "either guilty of contributory negligence or incurring the risk of injury" if it found that the plaintiffs failed to use an available seatbelt and that the injury could thereby have been avoided. *Id.* at 185. The *Rhinebarger* court followed *Kavanagh, Birdsong,* and *Gibson* and determined that the instruction was unsupported by sufficient evidence, the only evidence of a relationship between the plaintiffs' injuries and the failure to use seat belts being that given by a witness "not qualified as a safety expert nor ... as a police officer," and with "no indication of the extent or source" of his knowledge of the plaintiffs' injuries. *Id.* at 186. Judge Buchanan, in a concurring opinion, pursued the matter further. He stated that few courts have found a common law duty to use seat belts which would support a finding of contributory negligence and no evidence should even have been admitted regarding a seatbelt defense "in the absence of legislation requiring the use of seat belts...." *Id.* ( Buchanan, J., concurring). He did observe, however, that a minority of courts have determined that non-use of seat belts can be considered "as to mitigation of

damages or avoidable consequences," but noted that this is inconsistent reasoning because mitigation occurs after the event, while failure to use a seatbelt occurs beforehand. *Id.* at 187.

The seatbelt defense finally came before our supreme court in *State v. Ingram,* 427 N.E.2d 444 (Ind.1981). In that case the defendant tendered a jury instruction which read, in part: "If you find from a consideration of all the evidence that the using and fastening of seat belts would have avoided or minimized the resulting damage, then the person wronged cannot recover for any item of damage which could have been avoided, or minimized." *Id.* at 447. The court observed that the doctrine of mitigation of damages or avoidable consequences "looks to the acts of the injured party only after the injury has occurred," while the act of buckling a seatbelt must occur or not before the injury. The court held "the seat belt defense may not be used to limit a plaintiff's recovery on the theory the plaintiff failed to take steps to mitigate his damages following the tort," and that the trial court did not err in refusing the tendered instruction. *Id.* at 448. The *Ingram* court remarked that it was not bound by the reference in *Kavanagh* to a "future date" when such a concept might be followed. The court did observe, however, that no current statute deals "with the duty of automobile riders to wear seat belts," and "[a]bsent a clear mandate from the legislature to require Indiana automobile riders to wear seat belts, we are not prepared to step into the breach and judicially mandate such conduct." *Id.*

Although *Ingram* disallowed evidence of seatbelt non-use, appellees distinguish this case on two grounds.[3] First, appellees argue that *Ingram* only addressed mitigation of damages, post-tort conduct, whereas this case involves fault for pre-tort con-

---

3. Although we are only addressing the seatbelt defense as it applies to the Highway Department, we have consolidated the Highway

Department's and the Lucas Brothers' argument on this issue for the sake of clarity.

duct. Second, appellees note that since the decision in *Ingram*, the Indiana Legislature has enacted statutes requiring the use of seatbelts.

### 2. The Seatbelt Defense as Evidence of Contributory Negligence

 Appellees urge that in this case they are not offering the seatbelt defense as evidence of Hopper's failure to mitigate his damages as were the defendants in *Ingram*; rather, appellees are arguing that the evidence is being admitted to demonstrate the negligence of Hopper. As mentioned, pursuant to Indiana Code Section 34–51–2–2, the Highway Department is not subject to the Indiana Comparative Fault Act, and therefore, it has the defense of contributory negligence at its disposal. Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection. *Peavler v. Board of Comm'rs of Monroe County*, 557 N.E.2d 1077, 1080 (Ind.Ct.App.1990), *trans. denied.* A plaintiff must exercise that degree of care which an ordinarily reasonable person would exercise in like or similar circumstances. *Id.* In addition, the plaintiff's negligence must either be the proximate cause of the injury or proximately contribute thereto. *Id.* Since the question of contributory negligence does not arise except in a case where it has been shown that the defendant was guilty of negligence which was the proximate cause of injury, a plaintiff's negligence need not be the sole proximate cause of the injury. *Id.* In short, contributory negligence is determined and governed by the same test and rules as a defendant's negligence. *Kroger Co. v. Haun*, 177 Ind.App. 403, 413, 379 N.E.2d 1004, 1010 (1978).

 Appellees argue that the plaintiff "has a common law duty to use reasonable care to avoid injury to himself." Brief of Appellee Lucas Brothers, Inc. at 6, *citing Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1372 (Ind.1992). While we agree with this principle of tort law, we see a difference between a plaintiff's duty to avoid injuring himself and a plaintiff's duty to anticipate the negligence of another. Under the common law, a plaintiff ordinarily does not have a duty to anticipate the negligence of another. *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 920–21 (7th Cir. 1991). As Judge Posner stated in *Haugh*, "[a]ccident victims almost always can as a matter of physical possibility prevent accidents to themselves. Pedestrians could wear helmets or refuse to cross at intersections if there was any traffic even if the light was with them, or cower at home." *Id.* The policy rationale behind this principle of law is well reasoned: if plaintiffs were required to anticipate the negligence of others, our jurisprudence would shift the duty of taking care from the careless to the careful. *Id.* Moreover, "the more careless people were, the greater would be the duty of their potential victims to protect themselves against carelessness." *Id.* at 920.

This court has also had the opportunity to address the issue of a plaintiff's duty to protect himself from another's negligence. In *State v. Eaton*, 659 N.E.2d 232 (Ind.Ct. App.1995), *trans. denied*, the plaintiff was riding a motorcycle without protective headgear or eyewear. The plaintiff was traveling on a state highway which was covered in dust as a result of a highway maintenance crew's continuing work. Because the dust obscured the plaintiff's vision, the plaintiff collided with the rear of a semi-tractor trailer, receiving serious neurological injuries. The plaintiff sued the State. At trial, the trial court did not allow the State to use evidence of the plaintiff's failure to wear a helmet or protective eyewear in support of its contributory negligence defense. We affirmed the trial court's decision. In so doing, we noted that the tort of negligence is comprised of three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, 3) which proximately caused plaintiff's damage. *Id.* at 236.

This court determined that the plaintiff did not have a duty to wear protective headgear because the Indiana legislature did not mandate the use of protective headgear and because the dust on the roadway was not a foreseeable risk against which the plaintiff should have protected himself. Specifically, we stated: " 'A motorist is not required to be constantly prepared for every conceivable circumstance, and to insure against every accident.' " *Id., quoting Brock v. Walton,* 456 N.E.2d 1087, 1091 (Ind.Ct.App.1983).

Applying these principles to the present case, we conclude that under the common law alone, Hopper was not under a duty to anticipate the alleged negligence of the Highway Department. We believe that this conclusion is consistent with our supreme court's decision in *Ingram.* While that case dealt specifically with mitigation of damages, that court also noted that absent a clear legislative mandate creating a duty to wear a seatbelt, no such duty would be judicially created. Our supreme court's discussion in this vein clearly expands the scope of the decision beyond just mitigation of damages to prohibit this court from creating a duty of automobile occupants to wear a seatbelt. Allowing evidence of Hopper's failure to wear a seatbelt to establish contributory negligence would do just that.

### 3. *Statutory Developments*

██ The appellees also argue that the statutory mandate mentioned in *Ingram* now exists. In 1985, the legislature enacted a mandatory passenger restraint law and created a statutory duty for occupants of certain vehicles to wear seat belts. *See* P.L. 122–1985, SEC. 1. As currently codified, Indiana Code Section 9–19–10–2 requires:

> Each front seat occupant of a passenger motor vehicle that is equipped with a safety belt meeting the standards stated in the Federal Motor Vehicle Safety Standard Number 208 (49 CFR 571.208) shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion.

Generally, a passenger motor vehicle is defined as "a motor vehicle designed for carrying passengers," but does not include a motorcycle, bus or school bus. Ind.Code § 9–13–2–123(a). However, for purposes of the passenger restraint law specifically, a passenger motor vehicle does include buses, school buses, and private buses, but does not include trucks, tractors, and recreational vehicles. Ind.Code § 9–13–2–123(b). Therefore, for instance, a truck could be a passenger motor vehicle, but an occupant thereof is not required to comply with Indiana Code Section 9–19–10–2. Accordingly, at the time of the accident, the Hoppers were not required to comply with the statute.

██ In addition, Indiana Code Section 9–19–10–7 provides that "[f]ailure to comply with section 1, 2, 3, or 4 of this chapter does not constitute fault under IC 34–51–2 [Indiana Comparative Fault Act]...." We conclude that had the Hoppers been front seat occupants in a passenger motor vehicle not excluded from Indiana Code Section 9–19–10–2, evidence of their failure to comply with the statute would not be admissible to demonstrate fault in an action based upon negligence under the Comparative Fault Act. Moreover, such evidence would not be admissible in a civil case regarding mitigation of damages, with the exception of products liability actions. *See* Ind.Code 9–19–10–7(b).

██ We are presented with an interesting dilemma. The legislature has spoken on a passenger's duty to wear a seatbelt, however, that duty cannot be used to demonstrate fault and does not apply to Hopper. Based on the language of *Ingram,* we must conclude that the Indiana Legislature has not altered the common law. Our supreme court stated that no duty to wear a seatbelt would be recognized absent "a clear mandate from the legislature." *Ingram,* 427 N.E.2d at 448. The legislative enactments since *Ingram*

are anything but clear. Not only does the requirement to wear seatbelts not apply to the present case, but where the legislature so required, it specifically stated that such evidence cannot be used to demonstrate fault. Accordingly, we find the state of the law with regard to the seatbelt defense today as the supreme court found it in *Ingram:* there is no duty, common law or otherwise, for an occupant of a truck to wear his seatbelt.

 We note, however, that the Fire Department had a policy requiring the use of seat belts. We recognize that the Fire Department's rule may have been enacted not only for the safety of the fire fighters, but also to help eliminate lawsuits against it. Had the Fire Department been a defendant in this action, the evidence of failure to wear a seatbelt may have been admissible to demonstrate fault, only to the extent that the policy made known a specific risk against which the Fire Department was attempting to guard. In such a case, the Fire Department may have availed itself of the incurred risk defense. Such a defense is available only when the plaintiff accepts "a specific risk of which the plaintiff has actual knowledge." *Power v. Brodie,* 460 N.E.2d 1241, 1242 (Ind.Ct.App.1984).[4] We also note that general knowledge of the possibility of an accident does not constitute knowledge of a specific risk. Thus, the seatbelt defense may not be used under a theory of incurred risk by the Highway Department.

### B. *Carey and Lucas Brothers*

 As mentioned, Hopper's complaint against Carey and Lucas Brothers is governed by the Indiana Comparative Fault Act, Ind.Code § 34–51–2–1 through –19. The Comparative Fault Act created a modified comparative fault scheme in which "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages...." Ind.Code § 34–51–2–5. In addition, "the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages." Ind. Code § 34–51–2–6. For purposes of comparative fault, the term "fault" includes "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and *unreasonable* failure to avoid an injury or to mitigate damages." Ind.Code § 34–6–2–45(b) (emphasis added). Thus, one's fault can include an act or omission occurring either before or after the fault of another. The Act eliminated contributory negligence as a complete defense, as well as other common-law defenses. *Heck v. Robey,* 659 N.E.2d 498, 504 (Ind.1995). Additionally, the defense of incurred risk is subsumed by the concept of fault in our comparative fault scheme. *Id.* As a component of fault, it is subject to the Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault. *Id.* at 504–05.

---

**4.** We note that in *Walsh v. Emergency One, Inc.,* 26 F.3d 1417 (7th Cir.1994), the court held that the Fire Department's policy that fire fighters must wear seatbelts created a duty of fire fighters to do so. We find *Walsh* distinguishable from the present case. "Walsh was a veteran Chicago fire fighter who was injured when he was thrown from the unenclosed seating atop a fire truck as the truck responded to an emergency call." *Id.* at 1419. The plaintiff brought a negligence and products liability action against the manufacturer of the fire truck. Following a jury verdict for the defendant, Walsh appealed, contending that the trial court erred in admitting evidence regarding his failure to wear an available seatbelt. In affirming the decision below, the court determined that "Walsh had a duty to wear a seatbelt: the [Chicago Fire] Department required that all firemen do so." *Id.* at 1421. As mentioned, however, our supreme court has instructed that no such duty shall exist absent a clear mandate from our legislature. The fire department's regulation is no such mandate.

■ The language of the Indiana Comparative Fault Act contemplates the retention of existing negligence concepts. *Compton v. Pletch,* 561 N.E.2d 803, 806 (Ind.Ct.App.1990), *opinion adopted by* 580 N.E.2d 664 (Ind.1991). Thus, a plaintiff cannot have any percentage of fault attributable to him unless it is shown that he has breached a duty of care. In short, a plaintiff cannot be at fault under Indiana Code Section 34–6–2–45(b) for failure to avoid injury or mitigate damages by wearing a seatbelt if that plaintiff did not have a common law duty to do so; in such a case, it cannot be said that the plaintiff's failure to avoid injury is "unreasonable." *See* Ind.Code § 34–6–2–45(b). Accordingly, we conclude that the seatbelt defense is likewise unavailable to Carey and Lucas Brothers for the very reasons it is unavailable to the Highway Department.

### C. S & S Fire Apparatus

■ Hopper's claim against S & S Fire Apparatus is governed by the Indiana Products Liability Act. Products liability actions are subject to specifically enumerated defenses. *See* Ind.Code § 34–20–6–3 through –5. "It is a defense to an action under [Ind.Code § 34–20] that the user or consumer bringing the action: (1) knew of the defect; (2) was aware of the danger in the product; and (3) nevertheless proceeded to make use of the product and was injured." Ind.Code § 34–20–6–3. "Thus, even if a product is sold in a defective condition unreasonably dangerous, recovery will be denied an injured plaintiff who had actual knowledge and appreciation of the specific danger and voluntarily accepted [incurred] the risk." *Koske v. Townsend Engineering Co.,* 551 N.E.2d 437, 441 (Ind.1990).

In the present case, the record is silent as to the basis of Hopper's products liability claim. We are unclear, therefore, whether the defect in the fire truck was open and obvious or whether warnings were placed on the truck informing the passengers of the specific risk from which Hopper's injuries resulted. Without such information, we are unable to determine the applicability of the incurred risk defense. We note that consistent with our above discussion of the seatbelt defense, such evidence is only admissible where the plaintiff has actual knowledge of a specific risk against which he fails to protect himself.

■ We also note that if Hopper is complaining of the absence of a structure designed for the safety of passengers in the event of a roll-over, evidence that seatbelts were adequate safety devices in the absence of such a structure would be valid evidence to negate Hopper's claim of causation. *See* Ind.Code § 34–20–2–1 ("[A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm *caused* by that product . . . ." (emphasis added)). In short, the lack of a safety device cannot be the cause of the injuries if other adequate but unused safety devices were available to the plaintiff. *See DePaepe v. General Motors Corp.,* 33 F.3d 737, 746 (stating that notwithstanding *Clarkson,* the Illinois Supreme Court would approve of the admission of evidence that the plaintiff was not wearing a seatbelt for the limited purpose of defending against a claim that the vehicle was defective in design). However, such a discussion is mere speculation as Hopper's specific grounds for a products liability claim are not disclosed by the record. Accordingly, on this issue, we must remand to the trial court for further findings.

### Conclusion

In conclusion, we hold that the seatbelt defense is not admissible to demonstrate fault under the common law defense of contributory negligence or the Indiana Comparative Fault Act. Moreover, the defense of incurred risk is likewise unavailable unless the defendant has actual

knowledge of a specific risk. Again, the general awareness that a future accident is possible does not constitute knowledge of a specific risk. We note that the Fire Department's policy that fire fighters wear seatbelts did not create a duty for Hopper to wear his seatbelt; however, had the Fire Department been a defendant in this action, it may have had the defense of incurred risk at its disposal if the policy warned of a specific risk from which the plaintiff's injuries were sustained. Based on the evidence in the record, therefore, we conclude that the trial court erred when it ruled that evidence of Hopper's non-use of his seatbelt is admissible to prove fault. Finally, we are unable to determine whether the evidence of Hopper's failure to use his seatbelt is admissible in his products liability action. Such evidence could be admissible to demonstrate incurred risk or to negate the element of causation, depending on the grounds of the claim and the relation of the facts thereto.

Reversed with instructions.

BAKER, J., and GARRARD, J., concur.