## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2018, 6:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael W. Phelps
Phelps Legal Group
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Charles S. Smith
Jon L. Bucher
Schultz & Pogue, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kip Seidenstucker,
*Appellant-Plaintiff,*

v.

Linda Ferguson,
*Appellee-Defendant.*

November 20, 2018

Court of Appeals Case No.
18A-CT-962

Appeal from the
Marion Superior Court

The Honorable
Heather A. Welch, Judge

Trial Court Cause No.
49D01-1601-CT-4

**Kirsch, Judge.**

[1] This appeal arises from a negligence claim that resulted from an automobile accident that occurred between Kip Seidenstucker ("Seidenstucker") and Linda Ferguson ("Ferguson"). Ferguson admitted fault at trial, and the case

proceeded to a jury trial to determine damages. The jury returned a verdict in favor of Seidenstucker in the amount of $34,105.09. He appeals and raises the following restated issues for our review:

I.   Whether the trial court abused its discretion when it denied, in part, Seidenstucker's motion in limine regarding the expert witness's medical license suspension; and

II.  Whether the trial court abused its discretion when it denied Seidenstucker's motion to correct error based on Seidenstucker's contention that the jury verdict was not based on the evidence presented at trial.

We affirm.

## Facts and Procedural History

On August 30, 2014, Ferguson made a left turn from Kingsley Drive onto Kessler Boulevard in Indianapolis, Indiana and collided with Seidenstucker's vehicle. *Tr. Vol. II* at 138-39. Shortly after the accident, Seidenstucker felt back pain and reported it to the police officer who had responded to the scene. *Id*. at 226-27. Seidenstucker did not seek medical attention at that time and refused an ambulance, but he proceeded to seek medical attention at the Indianapolis Veterans Administration Hospital later that day when the pain worsened. *Id*. at 232. Seidenstucker went to the emergency room where x-rays were taken. *Id*. at 161. For five or six weeks after the accident, Seidenstucker's pain improved; however, he reached for something one day, and his pain worsened. *Id*. at 162, 233; *Appellant's App. Vol. 2* at 25. Seidenstucker returned to the emergency

room complaining that his back pain was radiating. *Tr. Vol. II* at 162. The emergency room staff diagnosed him with sciatica, and he received steroids, muscle relaxants, and hydrocodone and was told that he might need physical therapy. *Id*. Several weeks later, Seidenstucker went to his primary care physician and complained of back pain, and his doctor ordered physical therapy. *Id*. Seidenstucker did not complete his course of physical therapy. *Id*. at 162-63, 169, 188-89.

[4] On December 21, 2015, Seidenstucker filed his complaint for negligence against Ferguson. Ferguson admitted fault, and the case proceeded to a jury trial on damages on February 13-14, 2018. On February 8, 2018, Seidenstucker filed a motion in limine regarding the admission of testimony about a criminal conviction and suspension of the medical license of his expert witness, Dr. Robert Gregori ("Dr. Gregori"), a pain management physician. The trial court granted in part and denied in part the motion, ruling that evidence of Dr. Gregori's criminal conviction was not admissible, but that evidence of the suspension of his medical license was admissible. *Appellant's App. Vol. 2* at 12.

[5] At trial, Dr. Gregori testified that Seidenstucker had two issues that were related to the accident: an aggravation of his degenerative disc condition and lumbar strain with a sacroiliac ("SI") injury on the right side. *Id*. at 28; *Tr. Vol. II* at 173-78. Dr. Gregori opined that Seidenstucker would experience pain indefinitely. *Tr. Vol. II* at 182. Dr. Gregori testified that Seidenstucker would have benefited from more physical therapy and that patients who go through their "prescribed physical therapy and all their scheduled visits tend to do

better" than those who do not. *Tr. Vol. II* at 169, 188. Dr. Gregori opined that Seidenstucker may need some additional treatment for the SI joint. *Id*. at 179. Specifically, Dr. Gregori stated that SI injections with steroid numbing medicine would serve two benefits: (1) diagnostic, in that if it helped significantly with Seidenstucker's pain, it would identify the origin of the pain; and (2) lasting relief from pain. *Id*. Dr. Gregori stated that most patients benefit from these SI injections after doing it "for two or three months" and then repeating it. *Id*.

[6] Dr. Gregori also testified that Seidenstucker might benefit from neural ablation therapy, a course of treatment where the doctor uses radio frequency to burn the nerves. *Id*. Dr. Gregori also testified that the neural ablation therapy could provide longer term relief, but that there could be some regeneration of the nerves. *Id*. at 180. Such regeneration could require a patient "to have [the neural ablation therapy] repeated in a couple of years." *Id*. Dr. Gregori also testified that he believed that physical therapy could benefit Seidenstucker and could help with both the SI joint and his low back pain. *Id*. Evidence was presented that the cost of the two SI injections would range from $3,000.00 to $4,000.00 each (for a total of $6,000.00 to $8,000.00) and each subsequent neural ablation therapy would range from $4,000.00 to $6,000.00. *Appellant's App. Vol. 2* at 28. The cost for additional physical therapy would be between $1,200.00 to $1,600.00. *Id*. The trial court took judicial notice of the fact that Seidenstucker's life expectancy was an additional fifty years. *Tr. Vol. III* at 23.

[7] Dr. Gregori's medical license was suspended in 2007. *Tr. Vol. II* at 185. His license was reinstated with probationary status in 2009, and the probationary status was removed in 2012. *Id*. at 185, 186. At the time of trial, Dr. Gregori was still unable to prescribe opiate medications due to his lack of a Drug Enforcement Agency number. *Id*. at 184-85. Dr. Gregori testified that he provides independent medical examinations as 95% of his business, with the other 5% involving the treatment of patients. *Id*. at 184.

[8] The jury returned a verdict in favor of Seidenstucker for a total amount of $34,105.09. *Tr. Vol. III* at 96. The trial court entered judgment consistent with that verdict on February 21, 2018. *Appellant's App. Vol. 2* at 8-10. On March 12, 2018, Seidenstucker filed a motion to correct error, or in the alternative, a motion for additur, contending that the jury's "verdict did not take into account the uncontroverted testimony of Dr. Gregori." *Id*. at 13-17. The trial court denied Seidenstucker's motion to correct error. Seidenstucker now appeals.

## Discussion and Decision

## I. Motion in Limine

[9] "The grant or denial of a motion in limine is within the sound discretion of the trial court and is an adjunct of the power of trial courts to admit and exclude evidence." *Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298, 302 (Ind. Ct. App. 2016) (citing *Hopper v. Carey*, 716 N.E.2d 566, 570 (Ind. Ct. App. 1999), *trans. denied*), *trans. denied*. Therefore, when reviewing a grant or denial of a motion in limine, we apply the standard of review for the admission of evidence, which is

whether the trial court abused its discretion. *Id* at 302-03. We will find that a trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. at 303 (citing *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1047 (Ind. Ct. App. 2007), *trans. denied*).

[10] Seidenstucker argues that the trial court abused its discretion when it denied the part of his motion in limine regarding the suspension of Dr. Gregori's medical license. Seidenstucker asserts that the evidence of the doctor's medical license suspension should not have been admitted because it was not relevant, and it was unfairly prejudicial. Seidenstucker further claims that it was error to admit the evidence because it created a situation where he could only explain the license suspension and rehabilitate his expert witness by delving into the underlying facts of Dr. Gregori's criminal conviction, which evidence is not admissible.

[11] Prior to trial, Seidenstucker filed a motion in limine to exclude evidence of both Dr. Gregori's prior criminal conviction and suspension of his medical license. After hearing argument, the trial court granted the motion in limine in part and denied it in part, ruling that evidence of Dr. Gregori's criminal conviction was inadmissible, but that evidence of the suspension of his medical license could be admitted. *Appellant's App. Vol. 2* at 12. The Indiana Medical Licensing Board suspended Dr. Gregori's license in 2007. *Tr. Vol. II* at 185. His license was reinstated with probationary status in 2009, and the probationary status was removed in 2012. *Id*. at 185, 186. At the time of trial, Dr. Gregori was still

unable to prescribe opiate medications due to his lack of a Drug Enforcement Agency number. *Id*. at 184-85. Dr. Gregori testified that he provides independent medical examinations as 95% of his business, with the other 5% involving the treatment of patients. *Id*. at 184.

[12] A panel of this court has found comparable evidence admissible for the purpose of impeaching an expert in *Fridono v. Chuman*, 747 N.E.2d 610 (Ind. Ct. App. 2001), *trans. denied*. In that case, Fridono filed a medical malpractice action against Dr. Chuman alleging that he failed to comply with the applicable standard of care in performing a cervical laminectomy. *Id*. at 610. At trial, Fridono presented the testimony of an expert witness in support of his theory that the surgery performed by Dr. Chuman was unnecessary. *Id*. at 615. On cross examination, Dr. Chuman asked the expert if his privileges at a medical school had ever been restricted. *Id*. Dr. Chuman used a letter agreement between the expert and the medical school that imposed restrictions on his privileges as a result of the peer review process as a means of impeaching the expert and challenging his qualifications as an expert. *Id*. On appeal, this court found that, while the discussions of the peer review committee were protected by the applicable peer review statute, and were therefore not discoverable, the final action taken as a result of that peer review process was discoverable and admissible in judicial proceedings to impeach the expert witness. *Id*. at 620.

[13] Likewise, in *Linton v. Davis*, 887 N.E.2d 960 (Ind. Ct. App. 2008), *trans. denied*, a defendant in a medical malpractice case was asked whether his conduct met the applicable standard of care. *Id*. at 965. After the doctor said his treatment

did meet the applicable standard of care, plaintiff's counsel questioned him about his medical license suspension. *Id.* On appeal, a panel of this court found that Davis could properly question Dr. Linton as to the standard of care and his opinion as to whether he met that standard. *Id.* at 968-69. Because he was properly questioned as to the standard of care, he was testifying as an expert and could therefore be impeached with his licensure status. *Id.* at p. 969.

[14] Here, Dr. Gregori was testifying as an expert witness in support of Seidenstucker's case against Ferguson. Because he was testifying as an expert, Dr. Gregori could, therefore, be impeached with the status of his medical license and the fact that it had been previously been suspended.

[15] Seidenstucker argues that the only purpose for introducing the evidence about Dr. Gregori's medical license suspension was to impeach him regarding his character for truthfulness. We disagree. The actual purpose of introducing such evidence was to question Dr. Gregori's credentials as an expert. Seidenstucker presented Dr. Gregori's testimony as expert testimony to establish his medical damages as a result of the automobile accident with Ferguson. Therefore, Dr. Gregori's board certification was relevant to this case and, likewise, so was his medical license history. Dr. Gregori provided opinions about Seidenstucker's condition and his treatment as an expert witness. And it was Dr. Gregori's expert opinions that were impeached by his testimony regarding the suspension of his medical license.

Seidenstucker also claims that the evidence of Dr. Gregori's suspension was an attempt to admit evidence of Dr. Gregori's criminal conviction for self-prescribing opioid medication because the license suspension was based on that conviction. Seidenstucker says that the only way of explaining the license suspension was to reveal the underlying facts of his criminal conviction. However, no actual evidence was introduced at trial that Dr. Gregori was convicted for self-prescribing medication, or that his license suspension resulted from such action. At no point during the questioning of Dr. Gregori was it suggested that his license suspension was the result of a criminal conviction, and Ferguson's counsel did not introduce evidence that Dr. Gregori was suspended for the abuse of drugs or a conviction related to drugs. Instead, Ferguson's counsel only asked limited questions about Dr. Gregori's licensure status. Therefore, we conclude that Ferguson was not attempting to introduce evidence of a crime or evidence regarding Dr. Gregori's character for truthfulness, but was only cross-examining an expert witness about the history of the credentials on which the witness relied for the authority to provide his expert opinion. We conclude that the trial court did not abuse its discretion when it denied Seidenstucker's motion in limine regarding the admission of the suspension of Dr. Gregori's medical license.

## II.   Motion to Correct Error

Generally, a trial court's ruling on a motion to correct error is reviewed for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017). An abuse of discretion occurs when the trial court's

decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[18] Seidenstucker argues that the trial court erred in denying his motion to correct error, in which he requested additur or a new trial. He contends that, based on the totality of the evidence presented at trial, the jury's verdict was inadequate. Specifically, Seidenstucker asserts that the testimony of Dr. Gregori established that Seidenstucker suffered a permanent SI injury and that he would experience pain indefinitely. Seidenstucker alleges that, because of this injury, he will need SI injections followed by neural ablation therapy, which could be required every one to two years for the rest of his life. Based on the cost of the SI injection, the neural ablation therapy, and future physical therapy, Seidenstucker maintains that the cost of his future treatment is likely between $210,200.00 to $300,400.00, which does not include his past medical bills of $8,105.09 or any pain and suffering. Seidenstucker claims that, therefore, the jury's verdict was inadequate and not supported by the evidence presented at trial.

[19] When reviewing a jury's damage award that the appellant claims is inadequate, we apply a strict standard. *Liter's of Ind., Inc. v. Bennett*, 51 N.E.3d 285, 299 (Ind. Ct. App. 2016), *trans. denied.* "Specifically, we 'consider only the evidence that supports the award together with the reasonable inferences therefrom.'" *Id.* If there is any evidence to support the amount of the award, even if it is conflicting, this court will not reverse. *Id.* "This standard reflects the premise that damages 'are particularly a jury determination.'" *Id.* (quoting *Sears Roebuck*

*& Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001)). We, therefore, do not substitute our idea of a proper damage award for that of the jury. *Id.* (citing *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind. Ct. App. 1994), *trans. denied*)). "Because appellate courts are unable 'to actually look into the minds of the jurors, . . . we will not reverse if the award falls within the bounds of the evidence.'" *Id.* (quoting *Sears Roebuck,* 742 N.E.2d at 462).

[20] Based on our review of the record, we conclude that the jury's damage award was supported by the evidence presented. Evidence was presented that, at the time of the trial, Seidenstucker had incurred past medical expenses in the amount of $8,105.09. *Tr. Vol. III* at 23-24. Dr. Gregori testified that Seidenstucker would benefit from further physical therapy and that the cost for additional physical therapy would be between $1,200.00 and $1,600.00. *Appellant's App. Vol. 2* at 28. Dr. Gregori also testified that Seidenstucker would likely need two SI injections to assist with his pain and that the cost of these two SI injections would range between $3,000.00 and $4,000.00 each for a total of between $6,000.00 and $8,000.00. *Id.* Dr. Gregori testified that, after the SI injections, Seidenstucker could receive neural ablation therapy, which could provide longer term relief, but that there could be some regeneration of the nerves that could cause a patient to "have to have [the neural ablation therapy] repeated in a couple of years." *Tr. Vol. II* at 180. Evidence was presented that each subsequent neural ablation therapy would range from $4,000.00 to $6,000.00. *Appellant's App. Vol. 2* at 28. Although Dr. Gregori testified that Seidenstucker may need subsequent rounds of neural ablation therapy

indefinitely, his testimony was that it was only a possibility and not a definite requirement. *Tr. Vol. II* at 180.

[21] Additionally, Seidenstucker requested damages for pain and suffering. Although Dr. Gregori opined that Seidenstucker would experience pain indefinitely, evidence was also presented that he was able to work full time as an occupational therapist, was able to go to the gym four or five days a week, and "[p]hysically . . . was able to do most things". *Tr. Vol. II* at 182, 236, 240; *Tr. Vol. III* at 17-18. Assessing the value of damages for pain and suffering, because it involves the weighing of evidence and credibility of witnesses, is particularly within the jury's discretion. *Gary Cmty. Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 250 (Ind. Ct. App. 2014), *trans. denied*. The jury is in the best position to award damages for pain and suffering. *Id*. We, therefore, conclude that the jury's award of damages was within the evidence presented at trial, and the trial court did not abuse its discretion when it denied Seidenstucker's motion to correct error.

[22] Affirmed.

Vaidik, C.J., and Riley, J., concur.