

FILED

Mar 09 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Hand Ponist Horvath Smith & Rayl, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Cannon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

March 9, 2020

Court of Appeals Case No.
19A-CR-1036

Appeal from the Marion Superior
Court

The Honorable Sheila A. Carlisle,
Judge

Trial Court Cause No.
49G03-1706-F5-23831

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Daniel Cannon was found guilty of two counts of criminal recklessness resulting in death, a Level 5 felony; three counts of criminal recklessness resulting in serious bodily injury, a Level 6 felony; leaving the scene of an accident resulting in death, a Level 5 felony; and leaving the scene of an accident with serious bodily injury, a Level 6 felony. The trial court sentenced Cannon to serve six years in the Indiana Department of Correction ("DOC"). Cannon appeals and raises the sole issue of whether there is sufficient evidence to support his convictions. Concluding there was sufficient evidence, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdicts are as follows. On the evening of April 18, 2017, Taylor Parsons, Brandon Gross, Michael Blackmore, Olivia Evans, and Kristopher Church (collectively "the teenagers") drove to West Park, which is located near the intersection of Morris and Tremont Streets in Indianapolis. The teenagers sat on the playground equipment, shared a marijuana joint, and hung out, "having fun, talking[, and] joking with each other[.]" Transcript, Volume 2 at 190. As the teenagers hung out, Danielle Cannon, Cannon's older sister, and Felicity Lowry, Cannon's girlfriend at the time, were near the park searching for Cannon's missing drone. They overheard the teenagers' conversation and Felicity yelled out a comment in response. The teenagers engaged in banter with Danielle and Felicity as they continued to search for the

drone. The joking escalated and became argumentative and aggressive; Danielle asked if the teenagers wanted to fight.

[3] The teenagers then climbed into Taylor's car, a gold Nissan Pathfinder; Taylor got into the driver's seat with Michael in the front passenger seat, Brandon seated directly behind Taylor, Kris in the middle back seat, and Olivia seated behind Michael. They drove across the soccer field toward Danielle and Felicity as if they were "playing chicken[.]" *Id.* at 128. With all the teenagers in the Pathfinder, Taylor drove past Danielle and Felicity and then exited onto the street; Danielle and Felicity began running after the vehicle. At some point, as they all continued to argue, a black SUV driven by Cannon pulled up next to the Pathfinder and turned its headlights off. The teenagers were unable to see the driver because the SUV had tinted windows; the SUV was so close to the Pathfinder that Taylor and Brandon, both on the driver's side of the vehicle, would not have been able to open their doors. When the SUV pulled up, Danielle and Felicity stopped running and began yelling to Cannon that the teenagers tried to run them over.

[4] Concerned about the SUV's conduct, Taylor drove down the street. Cannon followed in the SUV. Once Taylor turned onto Morris Street, Cannon continued directly behind them at a very close distance. Olivia testified that Cannon was "getting so close to us, we really th[ought] he's going to hit the car that['s] why we had to go faster. And then he wouldn't stop or slow down, he'd go faster again." *Id.* at 203. Fearing the SUV would hit them given the traffic at an upcoming stoplight on Holt Road, they got onto I-70 and immediately

moved into the fast lane. Their speed was "gradually increasing[.]" *Id.* at 204. Cannon followed them onto the interstate and the chase continued. Cannon would give them "a little room and then . . . would go faster again." *Id.* at 205. The teenagers believed Cannon was going to run into their car; they weaved in and around the other cars on the interstate at an extremely high speed, ranging from 70 to 120 mph.

[5] While still in the fast lane and driving at a high speed, Taylor veered to get off the interstate and on to the Harding Street exit. However, the exit ramp was short and had a red light at the end. Taylor then attempted to turn back onto interstate but as soon as she tried to turn, the car flipped five or six times. At no point did Cannon's vehicle make physical contact with the Pathfinder. At the time of the accident, Olivia was the only one wearing her seatbelt; the other teenagers were ejected from the vehicle. Brandon and Taylor were killed, and the other teenagers survived but suffered serious injuries. Michael suffered an aortic tear, dislocated shoulder, a broken femur, and a broken collar bone; Kris suffered loss of consciousness, a broken shoulder blade, a bruised lung, a traumatic brain injury, and memory loss; and Olivia suffered loss of consciousness, a scalp laceration, and memory loss. *See* [Confidential] Exhibits, Volume 1 at 38-39. Officers later learned that Cannon was involved in the chase.

[6] On June 28, 2017, the State charged Cannon with the following: Counts I and II, criminal recklessness resulting in death, both Level 5 felonies; Counts III, IV, and V, criminal recklessness resulting in serious bodily injury, all Level 6

felonies; Count VI, leaving the scene of an accident resulting in death, a Level 5 felony; and Count VII, leaving the scene of an accident with serious bodily injury, a Level 6 felony. *See* Appellant's Appendix, Volume II at 40-42. The State later amended the charging information and added additional charges: Counts VIII and IX, reckless homicide, both Level 5 felonies. *See id.* at 77-80. Notably, the parties stipulated that the injuries suffered by Michael, Kris, and Olivia constituted serious bodily injury to support the criminal recklessness and leaving the scene of an accident resulting in serious bodily injury counts. *See* Exhibits, Vol. 1 at 38-39.

[7] A jury trial was held on November 26-28, 2018 during which testimony revealed that the cause of the accident was unsafe speed and overcorrection by the driver. Sergeant Mark Helms of the Indiana State Police was the accident reconstructionist in the case. At trial, he testified that had all occupants of the Pathfinder been wearing their seatbelts at the time of the accident, they would not have been ejected from the vehicle and would have remained in the passenger compartment. *See* Tr., Vol. 3 at 250; Tr., Vol. 4 at 4. Helms agreed that four of the teenagers' failure to wear a seatbelt led to more serious injuries and/or death as they would not have been ejected from the vehicle; had they worn their seatbelts they would have suffered less severe injuries. Tr., Vol. 4 at 2-4. When asked whether he believed the accident would have been survivable had the teenagers worn their seatbelts, Helms responded, "[m]ore than likely, yes." *Id.* at 8.

[8]     The jury found Cannon guilty of Counts I through VII and not guilty of Counts VIII and IX (reckless homicide). The trial court entered judgments of conviction for Counts I and VI (criminal recklessness resulting in death and leaving the scene of an accident resulting in death). At the sentencing hearing, the trial court vacated the remaining counts and sentenced Cannon to six years each on Counts I and VI to be served concurrently in the DOC. Cannon now appeals.

# Discussion and Decision

## I. Standard of Review

[9]     Our standard of reviewing a sufficiency claim is well-settled. *Brent v. State*, 957 N.E.2d 648, 649 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence or assess the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences supporting it. *Id.* Therefore, the evidence need not overcome every reasonable hypothesis of innocence. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). "[W]e will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

## II. Sufficiency of the Evidence

[10]    Cannon challenges all but one of his criminal recklessness convictions. He does not challenge his criminal recklessness conviction related to Olivia – the only

teen wearing her seatbelt – nor does he challenge his leaving the scene of an accident convictions. Instead, Cannon only challenges the sufficiency of the evidence supporting his criminal recklessness convictions related to the teenagers who were *not* wearing their seatbelts at the time of the accident, namely Taylor, Brandon, Michael, and Kris. Cannon's main contention is that the evidence was insufficient to support his challenged convictions because these teenagers' failure to wear their seatbelts constitutes an "intervening cause that broke the chain of causation of [his] fault for their injuries." Brief of Appellant at 13. We disagree.

[11] To convict Cannon of criminal recklessness, the State was required to prove that he recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person. Ind. Code § 35-42-2-2(a) (2014). The offense is a Level 6 felony if the person committed aggressive driving that resulted in serious bodily injury to another person, Ind. Code § 35-42-2-2(b)(1)(B) (2014)[1], and a Level 5 felony if it results in the death of another person, Ind. Code § 35-42-2-2(b)(2)(B) (2014). An intervening cause is an independent force that breaks the causal connection between a defendant's actions and the victim's injuries. *Watson v. State*, 776 N.E.2d 914, 920 (Ind. Ct. App. 2002). "In order for an intervening cause to break the chain of criminal

---

[1] "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

responsibility, it must be so extraordinary that it would be unfair to hold the [defendant] responsible for the actual result." *Id.*

[12] This court has explained causation in the context of criminal liability:

> The concept of causation in criminal law is similar to that found in tort law. Like in tort law, the criminal act must be both 1) the actual cause (sometimes called the "cause-in-fact"); and 2) the legal cause (sometimes called the "proximate cause") of the result. Cause-in-fact requires that "but for" the antecedent conduct, the result would not have occurred. If there is more than one cause which precipitates the result, the defendant's action is the cause-in-fact if it is a "substantial factor" in bringing about that result.
>
> Legal or proximate cause is a distinct concept, speaking not to the physical relationship between the actor's conduct and the result, but instead embodying a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible. Thus, proximate cause questions are often couched in terms of "foreseeability"; an actor is not held responsible for consequences which are unforeseeable. In Indiana, a result is deemed foreseeable if it is a "natural and probable consequence" of the act of the defendant.
>
> In cases where an action of the victim . . . affects the chain of causation, foreseeability is again a factor. Such an occurrence is called an "intervening cause", and it becomes a superseding cause breaking the chain of causation if it was not foreseeable. If an intervening and superseding cause aided in bringing about the result, the defendant is not criminally liable.

*Bowman v. State*, 564 N.E.2d 309, 313 (Ind. Ct. App. 1990), *summarily aff'd in relevant part*, 577 N.E.2d 569 (1991) (internal citations omitted).

[13]     The crux of Cannon's argument is that in 2017, over thirty years after Indiana enacted its mandatory seatbelt law, it was *not* foreseeable that the teenagers would fail to wear their seatbelts. *See Hopper v. Carey*, 716 N.E.2d 566, 574 (Ind. Ct. App. 1999), *trans. denied*; *see also* P.L. 122-1985.[2] Specifically, he contends, "In light of the habit of nearly one hundred percent of Hoosiers to wear a seatbelt in 2017, that these teenagers would not be wearing seatbelts was not foreseeable and constituted an intervening cause such that it would be unfair to hold [him] responsible for their decision not to do so." Br. of Appellant at 16-17. Cannon asserts that although this may have been foreseeable many years ago when the seatbelt law was new, it was not foreseeable in 2017. *See id.* Cannon's argument fails for two reasons.

[14]     First, this court has already decided this very question against Cannon's position. Several years after the enactment of the mandatory seatbelt law, a panel of this court addressed this issue and held that "it is clearly foreseeable that an automobile passenger might fail to wear a seatbelt" and therefore, failure to do so was not an intervening cause of a passenger/decedent's injuries breaking the chain of causation. *Bowman*, 564 N.E.2d at 313. Five years later, this court reaffirmed this principle in *Green v. State*, a case in which the

---

[2] "In 1985, the Indiana General Assembly added a new chapter to the Indiana Code mandating that drivers and passengers in motor vehicles wear seat belts in certain circumstances. P.L. 122-1985, § 1, now codified at Ind. Code § 9-19-10-2." *Baldwin v. Reagan*, 715 N.E.2d 332, 334 (Ind. 1999). Indiana Code section 9-19-10-2 now provides, "Each occupant of a motor vehicle equipped with a safety belt . . . shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." Prior to 1991, this provision was codified at Indiana Code section 9-8-14-1. *Baldwin*, 715 N.E.2d at 334 n.1.

defendant was convicted of two counts of reckless homicide after he consumed alcohol, drove his vehicle at 100 mph, and crashed – killing two of his passengers. 650 N.E.2d 307, 309 (Ind. Ct. App. 1995). The defendant appealed and argued that the victims' failure to wear their seatbelts was an intervening cause because they would have survived the accident had they been wearing their seatbelts. *Id.* at 309. Once again, we held that the passengers' failure to wear seatbelts was clearly foreseeable and thus, not an intervening cause of the passengers' deaths. *Id.* at 310.

[15] We acknowledge that these cases were decided closer in time to the mandatory seatbelt law's enactment. Nevertheless, these cases were all decided while Indiana's seatbelt requirement was in effect. Although Cannon asks us to revisit our jurisprudence in this particular arena in light of the alleged increased compliance with the seatbelt law and changing habits, we decline to do so. We conclude that under these facts, it was foreseeable that some or all of the teenagers might fail to wear their seatbelts in 2017 and therefore, the failure to wear a seatbelt is not an intervening cause relieving Cannon of criminal liability. *See Warner v. State*, 577 N.E.2d 267, 270 (Ind. Ct. App. 1991) (citing *Bowman* in concluding that a decedent's failure to wear her seatbelt was not an intervening cause and thus, there was sufficient evidence that the defendant's reckless driving was the direct and probable cause of the decedent's death). Similarly, given that this was a high-speed chase in which both parties were driving erratically on a heavily congested interstate, we are also unpersuaded

that the teenagers' decision to re-enter the interstate from the exit ramp constitutes an intervening cause. *See* Br. of Appellant at 17-19.

[16] Second, Cannon asserts that "[h]ad all five of the teenagers been wearing their seatbelts, they likely would have suffered relatively minor injuries." Br. of Appellant at 17. Assuming *arguendo* that failure to wear a seatbelt constitutes an intervening cause, the undisputed fact that Olivia *was* wearing her seatbelt during the accident and *still* suffered serious bodily injury completely undercuts Cannon's argument to this point. *See* Exhibits, Vol. 1 at 38-39 (the State and Cannon agreed that Olivia's injuries amounted to serious bodily injury). Despite Helms' testimony that the teenagers' injuries would have been *less severe* than the injuries they suffered had they been wearing their seatbelts, because Olivia wore her seatbelt *and* suffered serious bodily injury, Cannon cannot prove that Michael or Kris would *not* have suffered serious bodily injury. Indeed, their injuries may have been less severe than the injuries they did incur, but it is likely they would still have suffered serious bodily injury even with a seatbelt as illustrated by Olivia's injuries. Therefore, Cannon's argument fails.

[17] In sum, because Cannon's aggressive driving, that resulted in the death and serious bodily injury of other persons, was the proximate cause of the deaths and injuries and the teenagers' failure to wear their seatbelts is not an intervening cause breaking the chain of causation, we conclude the evidence is sufficient to support his convictions.

# Conclusion

[18] We conclude there was sufficient evidence in the record to support Cannon's convictions. Accordingly, we affirm.

[19] Affirmed.

Bradford, C.J., and Altice, J., concur.